**UNITED STATES of America, Plaintiff,**

v.

**Mark ST. PIERRE, Defendant.**

**Cr. 83–50028–01.**

United States District Court,
D. South Dakota, W.D.

Sept. 2, 1983.

---

Philip Hogen, U.S. Atty., Sioux Falls, S.D., Ted McBride, Asst. U.S. Atty., Rapid City, S.D., for plaintiff.

James Leach, Rapid City, S.D., for defendant.

## MEMORANDUM ORDER

BOGUE, Chief Judge.

What is a bird? Although obviously oversimplified, this question requires an answer in this case. Defendant is charged with a violation of the Migratory Bird Treaty Act (MBTA), 16 U.S.C.A. Sections 703–711. Defendant has moved this Court for its order dismissing the Indictment or, alternatively, directing that the Indictment charges a misdemeanor.

### I.

The Indictment charges:

On or about the 23rd day of October, 1981, in the District of South Dakota, Mark St. Pierre, without being permitted to do so by any regulation made, adopted and approved under the authority of the Migratory Bird Treaty Act of July 3, 1918, as amended, did unlawfully offer for sale and sell parts of a migratory bird, to-wit: feathers of a Golden Eagle in the form of an invitation stick, in violation of 16 U.S.C. Section 703 and Section 707.

16 U.S.C.A. Section 703 provides in pertinent part:

(I)t shall be unlawful at any time, by any means or in any manner, to ... offer for sale (or) sell ... any migratory bird, any part ... of any such bird, or any product, whether or not manufactured, which consists or is composed in whole or part, of any such bird or any part ... thereof ... (protected under certain conventions between the United States and foreign nations).

A violation of 16 U.S.C.A. Section 703 is made punishable by 16 U.S.C.A. Section 707, *United States v. Bullock*, 579 F.2d 1116, 1117 (8th Cir., 1978), which provides in part:

> (a) Except as otherwise provided in this section, any person ... who shall violate any provisions ... of section( ) 703 ... of this title ... shall be deemed guilty of a misdemeanor ....
>
> (b) Whoever, in violation of section( ) 703 ... of this title, shall—
>
> > (2) sell (or) offer for sale ... any migratory bird shall be guilty of a felony ...

## II.

■ Initially, Defendant requests this Court to dismiss the Indictment. Defendant asks this Court to implement a common sense approach to this case and to follow the age-old canon that "all laws should receive a sensible construction." *United States v. Hetzel*, 385 F.Supp. 1311, 1317 (W.D.Mo.1974), *quoting, United States v. Kirby*, 74 U.S. 482, 7 Wall. 482, 486, 19 L.Ed. 278 (1868). Defendant argues that such an approach and construction compels dismissal of the Indictment because of the *de minimus* conduct alleged.

This Court need go no farther than the statute and the Indictment to address Defendant's arguments. *See United States v. Blanket*, 391 F.Supp. 15, 17–8 (W.D.Okl. 1975). Section 703 makes it unlawful to offer for sale or sell any part of a migratory bird. The Indictment clearly charges that Defendant did unlawfully offer for sale and sell parts of a migratory bird. Neither of the penalty provisions, Section 707(a) or (b), is implicated at this point

because neither provision adds an element to the crime. For example, neither provision requires criminal intent as an element. *Rogers v. United States*, 367 F.2d 998, 1001 (8th Cir.1966), *cert. denied*, 386 U.S. 943, 87 S.Ct. 976, 17 L.Ed.2d 874 (1967); *United States v. F.M.C. Corp.*, 572 F.2d 902, 906–08 (2nd Cir.1978). Consequently, the Indictment contains the elements of the offense charged and fairly informs Defendant the charge against which he must defend. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Furthermore, the Indictment enables Defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Id.* Accordingly, it is hereby

ORDERED that Defendant's motion to dismiss the Indictment is denied.

## III.

### A.

Defendant next requests an order from this Court directing that the Indictment charges a misdemeanor. Defendant contends that the violation of federal law, as charged in the Indictment, is penalized under Section 707(a). The government asserts that it is penalized under Section 707(b). Defendant argues that Section 707(b) applies only to 'whole' migratory birds and not to "feathers of a Golden Eagle in the form of an invitation stick." The question therefore becomes whether the term 'migratory bird', as used in Section 707(b), includes parts as well as the whole bird. This Court believes it does.

■ First, Section 707(b)(2) requires a violation of Section 703. Migratory bird parts clearly are encompassed within Section 703. Next, the felony provision of Section 707 was added to the MBTA by a 1960 amendment. The purpose of this amendment was to provide more severe penalties for market hunters who commercialize the destruction of migratory birds. S.Rep. No. 1779, 86th Cong., 2d Sess. 1, *reprinted in* (1960) U.S.Code Cong. & Ad. News 3459, 3459. Certainly, this Congres-

sional purpose and intent to protect migratory birds applies not only to those who slaughter and sell whole migratory birds, but also to those who kill such birds and sell the bird parts. *Id.* at 3459–60. Whether a person purchases, finds or obtains by any means, migratory birds already slaughtered and then sells the whole bird, or whether a person sells the parts of such birds, makes no difference. It is the commercialization in migratory game birds, of whatever nature, that Congress addressed with the 1960 amendment. As Justice Jackson eloquently stated in his dissenting opinion in *United States ex rel. Marcus v. Hess,* "(i)f ever we are justified in reading a statute, not narrowly as through a keyhole, but in the broad light of the evils it aimed at and the good it hoped for, it is here." 317 U.S. 537, 63 S.Ct. 379, 390, 87 L.Ed. 443 (1943) (Jackson, J. dissenting). Any other construction of the term 'migratory bird' in Section 707(b) produces anomalous results. For example, if a person killed 100 migratory birds and removed one leg, two legs, the head or the tail feathers of each, such person properly could argue that Section 707(b) is inapplicable because a 'whole' migratory bird is not involved. This Court does not believe Section 707(b) turns on the percentage of the bird sold. It turns on the commercialized nature of the selling activity.

Although not addressing the precise issue before this Court, the United States Supreme Court in *Andrus v. Allard* recognized that "(o)n its face, the comprehensive statutory prohibition (of the MBTA) is naturally read as forbidding transactions in all bird parts, including those that compose pre-existing artifacts." 444 U.S. 51, 100 S.Ct. 318, 324, 62 L.Ed.2d 210 (1979). In *Andrus,* despite the fact that bird parts were lawfully taken before the onset of federal protection of migratory birds, the Supreme Court broadly held that the MBTA empowers the Secretary of Interior to bar commercial transactions in covered bird parts. *Id. See In re Pajarito American Indian Art, Inc.,* 7 B.R. 343, 346 (D.Ariz.1980). Similarly, in deciding whether a prosecution under the MBTA should

have been brought under the more specific Bald and Golden Eagle Protection Act (BGEPA), 16 U.S.C.A. Section 668(a), the Ninth Circuit Court of Appeals understood that:

> The MBTA, 16 U.S.C. Sections 703, 707(b) and the BGEPA, 16 U.S.C. Section 668(a), prohibit offering to sell or selling eagles or parts of eagles. Both (defendants) offered to sell and sold whole eagles and eagle parts to undercover agents. (Defendants) violated both statutes.

*United States v. Mackie,* 681 F.2d 1121, 1122 (9th Cir.1982). Additionally, in a different context, one court broadly construed the term 'migratory bird' as used in Section 707(b). *United States v. Richards,* 583 F.2d 491 (10th Cir.1978). The Tenth Circuit held that the Regulations of the Secretary of Interior, which defined migratory bird to include those birds raised in captivity, did not contravene the intent of Congress. *Id.* at 494.

■ These cases are illustrative of the expansive reading given the MBTA by different courts. This Court's view of the MBTA is consistent in that respect. Accordingly, this Court holds that the term 'migratory bird' in Section 707(b) includes a whole bird as well as any part thereof.

### B.

■ Defendant next contends that imposition of a felony conviction on Defendant for the instant offense violates due process of law. This Court agrees.

"It has long been held that under the (MBTA), 16 U.S.C.A. Sections 703–711, it is not necessary that the government prove that a defendant violated its provisions with guilty knowledge or specific intent to commit the violation." *Rogers,* 367 F.2d at 1001. In other words, Defendant is charged in the instant case with a strict liability *malum prohibitum* crime in which scienter is *not* an element. *See United States v. Corbin Farm Serv.,* 444 F.Supp. 510, 534 (E.D.Cal.1978), *aff'd,* 578 F.2d 259 (9th Cir.1978); *F.M.C. Corp.,* 572 F.2d at

906. On this basis, therefore, Defendant may be convicted of a felony without knowing that the feathers he was alleged to have sold were from a Golden Eagle.

Discussion of strict liability *malum prohibitum* crimes begin with *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The Supreme Court engaged in a lengthy historical discussion of the reasons, in certain cases, it construed mere omission from a criminal enactment of any mention of criminal intent as dispensing with it. *Morissette*, 72 S.Ct. at 243, *citing*, *United States v. Behrman*, 258 U.S. 280, 66 L.Ed. 619, 42 S.Ct. 303 (1922); *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). Such cases involved crimes frequently referred to as regulatory or public welfare offenses, *see United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); their number has steadily expanded over the years. *See United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). The *Morissette* court discerned certain characteristics common to this class of cases:

> These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. *Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation.* Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving.

*Morissette*, 72 S.Ct. at 246 (Emphasis added).

Recognizing these common characteristics, Judge, now Justice, Blackmun, writing for the Eighth Circuit Court of Appeals in *Holdridge v. United States*, 282 F.2d 302 (8th Cir.1960), addressed the due process aspect of strict liability *malum prohibitum* crimes.

> From these cases emerges the proposition that where a federal criminal statute omits mention of intent and where it seems to involve what is basically matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, *where the penalty is relatively small, where conviction does not gravely besmirch*, where the statutory crime is not one taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent. The elimination of this element is then not violative of the due process clause

*Holdridge*, 282 F.2d at 310 (Emphasis added).

Initially, this Court concludes that 16 U.S.C.A. Sections 703, 707(a) meets the relevant criteria as stated by Judge Blackmun. Section 707(a), the misdemeanor penalty provision, contains no mention of in-

tent. Its purpose, to protect migratory birds, is a matter of pervasive public policy. The penalty is relatively small (a fine not exceeding $500 or imprisonment not exceeding one year or both). Conviction would not do grave damage to a defendant's reputation. Nor is it a crime which was taken over from the common law. In addition, the requirements of the statute are not unreasonable in light of congressional policy in this area. *Holdridge* then compels the conclusion that the elimination of criminal intent in Section 707(a) is not violative of due process. *Id.* In this Court's judgment, however, Section 707(b) does not meet this criteria.

Section 707(b) is a felony penalty provision without mention of criminal intent and with a maximum sentence of two years imprisonment or $2,000 fine or both. This is not, in this Court's mind, a relatively small penalty. Furthermore, it simply cannot be said that a felony conviction of this nature does not "gravely besmirch." As pointed out in defense counsel's original brief at page 12, "(i)f convicted of a felony, (defendant) will lose his right to vote, his right to sit on a jury, and his right to possess a gun, among other (civil) rights, for the rest of his life." There can be no question but that a felony conviction irreparably damages a person's reputation in this respect.

Because the MBTA, 16 U.S.C.A. Sections 703, 707(b), does not require any degree of criminal intent, *Rogers*, 367 F.2d at 1001, and because Section 707(b) does not meet the relevant criteria enunciated by Judge Blackmun in *Holdridge*, this Court has no alternative but to find Section 707(b) violative of due process of law. 282 F.2d at 310. *Cf. United States v. Ayo-Gonzalez*, 536 F.2d 652 (5th Cir.1976) (culpability under 16 U.S.C. Section 1081 for illegally fishing in U.S. contiguous fishing zone is neither statutorily nor constitutionally necessary); *United States v. Heller*, 579 F.2d 990 (6th Cir.1978) (18 U.S.C. Section 875(a) requires criminal intent to transmit in interstate commerce communication containing demand for ransom); *United States v. Margraf*, 483 F.2d 708 (3rd Cir.1973) (no

intent required under 42 U.S.C. Section 1472(1), attempting to carry concealed deadly weapon aboard aircraft). As the Sixth Circuit Court of Appeals observed, "(c)ertainly, if Congress attempted to define a *malum prohibitum* offense that placed an onerous stigma on an offender's reputation and that carried a severe penalty, the Constitution would be offended ... *Heller*, 579 F.2d at 994. Such is the situation in the case at bar. Accordingly, it is hereby

ORDERED that if Defendant is convicted of a violation of 16 U.S.C.A. Section 703, this Court will sentence under the penalty of Section 707(a).