**UNITED STATES of America, Appellant,**

v.

**Robert WULFF, Defendant-Appellee.**

**No. 84–1213.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 18, 1985.

Decided April 3, 1985.

John A. Smietanka, U.S. Atty., Edith A. Landman, Grand Rapids, Mich., Claire L. McGuire (argued), Dirk D. Snel, Dept. of Justice, Land & Natural Resources Div., Appellate Section, Washington, D.C., for appellant.

Anthony J. Valentine (argued), Grand Rapids, Mich., for defendant-appellee.

Before CONTIE, KRUPANSKY and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

The United States appeals the judgment of the district court dismissing an indictment that charged the defendant, Robert Wulff, with offering to sell migratory bird parts in violation of the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. § 703 *et seq.* This case raises the question of whether a felony conviction for the sale of a migratory bird part in violation of the MBTA is violative of the due process clause of the Fifth Amendment of the United States Constitution. Because a felony conviction under the Act does not require proof of scienter, because the crime is not one known to the common law, and because the felony penalty provision is severe and would result in irreparable damage to one's reputation, we affirm the decision of the district court and declare the felony provision of the Act, § 707(b)(2), unconstitutional.

## I.

On September 15, 1983, a federal grand jury returned a one-count indictment charging the defendant with selling migratory bird parts in violation of 16 U.S.C. §§ 703 and 707(b)(2). Section 707(b)(2) provides as follows:

> (b) Whoever, in violation of sections 703 to 711 of this title, shall—
>
> \* \* \* \* \* \*
>
> (2) sell, offer for sale, barter or offer to barter, any migratory bird shall be guilty of a felony and shall be fined not more than $2,000 or imprisoned not more than two years, or both.

The indictment was based on a sale made by the defendant to a special agent of the United States Fish and Wildlife Service of a necklace made of red-tailed hawk and great-horned owl talons. Both birds are protected species under the Migratory Bird Treaty Act. The indictment charged, as an element of the offense, that the defendant acted "knowingly."

The defendant filed a "Motion to Strike Surplusages in Indictment" asking the district court to strike the word "knowingly" as not being required under section 707(b)(2) of the MBTA. The United States agreed to the elimination of the word.

The defendant also filed a "Motion to Dismiss Indictment or Enter Order Directing Charge of Misdemeanor," arguing that because section 707(b)(2) does not require guilty knowledge, imposition of a felony conviction would be a violation of due process. The district court agreed and directed that if the defendant was convicted of a violation, he would be sentenced under the misdemeanor provision of the Act, rather than the felony provision. In response to a motion by the United States, however, the district court ultimately dismissed the felony indictment and this appeal followed.

In arriving at its decision, the district court began with the principle that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). The district court noted, however, that the constitutional requirement of due process is not violated merely because *mens rea* is not an element of a proscribed crime, citing *United States v. Greenbaum*, 138 F.2d 437, 438 (3rd Cir.1943). The court further noted that there is no precise or easily applied formula available to resolve the present controversy and turned for guidance to the Supreme Court opinion in *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952):

> Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or. probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. *Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation.* Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving.

*Id.* at 255–56, 72 S.Ct. at 246 (emphasis supplied).

The district court next turned to the case of *Holdridge v. United States*, 282 F.2d 302 (8th Cir.1960):

> [W]here a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent. The elimination of this element is then not violative of the due process clause.

*Id.* at 310. The court noted that this articulation of the governing distinctions was approved by Justice Brennan in his concurrence in *United States v. Freed*, 401 U.S. 601, 613 n. 4, 91 S.Ct. 1112, 1120 n. 4, 28 L.Ed.2d 356 (1971).

Applying these legal precedents to the facts before it, the district court noted that the felony statutory penalty involved in this case included a maximum sentence of two (2) years' imprisonment or a fine of Two Thousand ($2,000.00) Dollars, or both. The district court felt that these were not "relatively small penalties." The district court further noted that a convicted felon loses his right to vote, his right to sit on a jury and his right to possess a gun, among other civil rights, for the rest of his life. The district court was of the opinion that a felony conviction irreparably damages one's reputation.

Based on these findings, the district court held that the MBTA felony penalty provisions did not meet the criteria of *Hol-*

*dridge, supra,* and, accordingly, concluded that section 707(b)(2) is violative of due process of law. As further support for its decision, the district court quoted *United States v. Heller,* 579 F.2d 990 (6th Cir. 1978):

> Certainly, if Congress attempted to define a *malum prohibitum* offense that placed on onerous stigma on an offender's reputation and carried a severe penalty, the Constitution would be offended. . . .

*Id.* at 994.

## II.

Dilemmas similar to the one presented in this case have been resolved in the past by reading a requirement of scienter into an otherwise silent statute. *See, e.g., Morissette, supra,* 342 U.S. at 263, 72 S.Ct. at 250. However, this court has previously held that Congress did not intend for scienter to be an element of the offense under the MBTA. *See United States v. Catlett,* 747 F.2d 1102 (6th Cir.1984); *United States v. Brandt,* 717 F.2d 955 (6th Cir.1983); and *United States v. Green,* 571 F.2d 1 (6th Cir.1978). Other courts that have addressed the issue are in accord. *See United States v. Ireland,* 493 F.2d 1208 (4th Cir.1973); *United States v. Wood,* 437 F.2d 91 (9th Cir.1971); *United States v. Ardoin,* 431 F.Supp. 493 (W.D.La.1977); *United States v. Bryson,* 414 F.Supp. 1068 (D.Del. 1976); and *United States v. Schultze,* 28 F.Supp. 234 (W.D.Ky.1939).

 These cases are distinguishable in that the convictions therein were under the misdemeanor penalty provisions of the MBTA or the regulations promulgated thereunder. Accordingly, nothing in this opinion is to be construed as in any way overruling or modifying those decisions. Rather, we are concerned with the construction of the felony provision of the MBTA, viz., 16 U.S.C. § 707(b)(2). In our opinion, we cannot read a requirement of scienter into section 707(b)(2) because the crime is not one known to the common law. An element of scienter can be read into an

otherwise silent statute only where the crime is one borrowed from the common law. *See Morissette, supra,* 342 U.S. at 252, 262, 72 S.Ct. at 244, 249; *Holdridge, supra,* 282 F.2d at 310.

The question thus becomes whether, given that a violation of the MBTA is a strict liability offense, a conviction under the Act operates to deny a defendant his right to due process under the Fifth Amendment. The United States argues that this court's decision in *Heller, supra,* does not compel the result reached by the district court. In *Heller,* the defendant was indicted under 18 U.S.C. § 875 of having willfully and knowingly transmitted in interstate commerce a communication containing a request for ransom and reward for the release of a kidnapped person. The defendant had argued that because the government had not charged that he acted with the intent to extort and because the punishment was severe, the statute was unconstitutional. This court held that the legislative history of the statute demonstrated that Congress intended the crime to include the intent to extort. The court cured any asserted defect by ruling that the indictment was insufficient because it did not correctly charge that the defendant acted with the requisite intent to extort and remanded the case to the district court.

The United States argues that the legislative history of the felony provision of the MBTA requires a different result here. The government notes that both before and after the 1960 amendment to the Act adding section 707(b)(2), scienter was not an element of an offense under the statute. Therefore, the 1960 amendment did not change the elements of an offense under the statute.[1] The United States further argues that the crime with which the defendant was charged here, that is, the sale of a necklace made from the parts of two protected species, is exactly the type of commercialization of protected birds Congress sought to punish as a felony.

---

1. It is quite likely that Congress omitted to require proof of scienter due to oversight.

 

This argument misses the point. The question before us today is not whether scienter is an element of the offense or whether Congress made a rational choice in legislating a felony conviction for the commercialization of protected birds. Rather, we must decide whether the absence of a requirement that the government prove some degree of scienter violates the defendant's right to due process.

We believe the proper guidance for the resolution of this issue can be found in Judge, now Justice, Blackmun's opinion in Holdridge, supra. Extrapolating from Holdridge, the proper test would appear to be as follows: The elimination of the element of criminal intent does not violate the due process clause where (1) the penalty is relatively small, and (2) where conviction does not gravely besmirch. As the district court held, section 707(b)(2) does not meet these criteria. The felony penalty carries a maximum sentence of two (2) years' imprisonment or Two Thousand ($2,000.00) Dollars fine, or both. "This is not, in this Court's mind, a relatively small penalty." United States v. St. Pierre, 578 F.Supp. 1424, 1429 (D.S.D.1983) (concluding that imposition of felony penalty under section 707(b) would violate due process and, therefore, directing that if convicted, the court would sentence under the misdemeanor provision). In addition, as the district judge noted, a felony conviction irreparably damages one's reputation,[2] and in Michigan a convicted felon loses, among other civil rights, his right to sit on a jury and his right to possess a gun. See, e.g., Mich. Comp.Laws § 600.1307(1)(e) (jury); and 18 U.S.C. app. § 1202 (firearms).

### III.

We are of the opinion that in order for one to be convicted of a felony under the MBTA, a crime unknown to the common law which carries a substantial penalty, Congress must require the prosecution to prove the defendant acted with some degree of scienter. Otherwise, a person acting with a completely innocent state of mind could be subjected to a severe penalty and grave damage to his reputation. This, in our opinion, the Constitution does not allow.

For the reasons stated herein, the judgment of the district court is AFFIRMED.

---

**2.** "[T]he infamy is that of a felony, which, says Maitland, is '... as bad a word as you can give to a man or thing.'" Morissette, supra, 342 U.S. at 260, 72 S.Ct. at 248 (footnote omitted).