UNITED STATES of America

v.

Edward ENGLER.

Crim. Nos. 85–00005, 85–00006
and 85–00049.

United States District Court,
M.D. Pennsylvania.

Nov. 19, 1985.

As Amended Nov. 21, 1985.

Timothy B. Haney, Asst. U.S. Atty., Harrisburg, Pa., for plaintiff.

Peter T. Campana, Williamsport, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

*Procedural History*

On January 10, 1985, the Grand Jury returned two indictments against the defendant: Middle District of Pennsylvania Criminal No. 85–00005–01 charged him with one count of selling or aiding and abetting the sale of stolen explosives in violation of 18 U.S.C. §§ 842(h), 844(a) and 2; Middle District of Pennsylvania Criminal No. 85–00006 charged the defendant with fifteen (15) counts of selling migratory birds or bird parts in violation of 16 U.S.C. §§ 703 and 707(b)(2). The defendant pleaded not guilty on February 7, 1985 to all counts in both indictments.

On March 7, 1985, the Grand Jury returned a third indictment against the defendant, Middle District of. Pennsylvania Criminal No. 85–00049, charging him with

one count of violating 18 U.S.C. §§ 842(h), 844(a) and 2 and one count of violating 16 U.S.C. §§ 703 and 707(b)(2).

By order of March 13, 1985, the court granted the defendant's motion to consolidate indictments. By order of March 14, 1985, the court granted defendant's motion for continuance. On March 15, 1985, the defendant pleaded not guilty to both counts of Criminal No. 85–00049.

Jury selection was conducted on May 6, 1985. Trial commenced on May 7, 1985. On May 15, 1985, the jury returned guilty verdicts on all counts.

On May 22, 1985, the defendant filed motions for judgment of acquittal and for a new trial. On August 29, 1985, the defendant filed a motion for permission to raise the issue of the constitutionality of the Migratory Bird Treaty Act. The motion was granted on October 1, 1985. The Government filed a brief on October 10, 1985. All motions are now ripe for decision.

*Constitutional Issue*

■ The issue presented is whether the defendant's felony conviction for the sales of migratory birds in violation of the Migratory Bird Treaty Act (MBTA), 16 U.S.C. §§ 707(b) violates the due process clause of the fifth amendment of the United States Constitution.

The sections of the statute relevant to this case are 16 U.S.C. 703 and 707. Section 703 provides in part that:

[I]t shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, kill, possess, offer for sale, sell, ... [or] purchase ... any migratory bird, any part, ... of any such bird, ... included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916, the United States and the United Mexican States for the protection of migratory birds and game mammals concluded February 7, 1936 and the United States and the Government of Japan for the protection of migratory birds and birds in danger of extinction, and their environment concluded March 4, 1972.

Section 707 provides in part:

(a) Except as otherwise provided in this section, any person ... who shall violate any provisions of said conventions or of this Act, or who shall violate or fail to comply with any regulation made pursuant to this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $500.00 or be imprisoned not more than six months, or both.

(b) Whoever in violation of Sections 703 to 711 of this title, shall—

(2) sell, [or] offer for sale ... any migratory bird shall be guilty of a felony and shall be fined not more than $2,000 or imprisoned not more than two years, or both.

The defendant relies upon the decision in *United States v. Wulff,* 758 F.2d 1121 (6th Cir.1985) which holds that the felony penalty provisions of the MBTA are unconstitutional. The Court of Appeals for the Sixth Circuit found that conclusion to be warranted "because a felony conviction under the Act does not require proof of *scienter,* because the crime is not one known to the common law, and because the felony penalty provision is severe and would result in irreparable damage to one's reputation." *Id.* at 1122.

In *Wulff,* the indictment charged as an element of the offense that the defendant acted "knowingly". The defendant filed a motion to strike the word "knowingly" from the indictment because it was surplusage and it was not required under Section 707(b)(2) of the MBTA. The United States agreed and the court granted the defense motion. The defendant then moved to dismiss the indictment arguing that because the felony provision of the MBTA, Section 707(b)(2) does not require guilty knowledge, imposition of a felony conviction would be a violation of due process.

The court in *Wulff* based its decision in part on the decisions in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96

L.Ed. 288 (1952) and *Holdridge v. United States*, 282 F.2d 302 (8th Cir.1960).

In *Morissette*, the Supreme Court observed that there is a class of criminal offenses theretofore recognized and approved by it, where motive or criminal intent is not a factor in the crime. The court stated:

Many of these offenses are not in the nature of positive aggression or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger of probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relative small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving. . . .

. . . . .

Congressional silence as to mental elements in an act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act.

342 U.S. at 255–256, 262, 72 S.Ct. at 246, 249. In *Holdridge*, Justice, then Circuit Judge, Blackmun wrote:

[W]here a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not one taken over ·from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent. The elimination of this element is then not violative of the due process clause. (Citation omitted)

*Id.* at 310.

The Government argues that the *Holdridge* criteria merely define when a court may construe a statute such that criminal intent is not a necessary element and that where such a statute does not meet the criteria defined in *Holdridge* criminal intent must be proved. With this contention the undersigned has no quarrel. However, the Government takes its case one step further and argues that neither *Morissette* nor *Holdridge* prohibits the court from supplying the element of criminal intent when the statute is silent. Before this court can supply the element of criminal intent when the statute is silent it is necessary in each instance to make a determination as to what Congress intended.

In entering into the various migratory bird treaties, the United States recognized that there were many species of birds which, in their annual migration, traverse certain parts of the United States, that they were of great value as a source of food and in destroying insects injurious to vegetation, and that these species were in

danger of extermination through lack of adequate protection. In *Missouri v. Holland,* 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920), Justice Holmes, in addressing the validity of both the Migratory Bird Treaty and the Act, stated "Here a national interest of very nearly the first magnitude is involved. It can be protected only by national action in concert with that of another power ... But for the Treaty and the statute there soon might be no birds for any powers to deal with." 252 U.S. at 435, 40 S.Ct. at 384.

It is apparent that in enacting section 707(b)(2), *scienter* was not to be an element of an offense thereunder. To include a specific intent requirement would be judicial legislation, and such inclusion could seriously hinder attempts at enforcing this statute.

Section 707(b) is a felony penalty provision with a maximum sentence of two years imprisonment or $2,000.00 fine or both. As the court held in *United States v. St. Pierre,* 578 F.Supp. 1424 (W.D.S.D. 1983) and "[t]his is not ... a relatively small penalty. Furthermore, it simply cannot be said that a felony conviction of this nature does not gravely besmirch." 578 F.Supp. at 1429, *United States v. Wulff,* 758 F.2d at 1125. Therefore, if Congress attempted to define a *malum prohibitum* offense that placed an onerous stigma on an offender's reputation and that carried a severe penalty, the Constitution would be offended. *United States v. Heller,* 579 F.2d 990, 994 (6th Cir.1978). The statute as written is in violation of the due process clause of the fifth amendment. Accordingly, the defendant having been convicted of a violation of 16 U.S.C.A. § 703, he should be sentenced under the penalty provision of Section 707(a).

*Motions for Judgment of Acquittal and New Trial*

The defendant's support of the above motions sets forth the following issues: (1) whether the conduct of the Government agents was so outrageous that it violated fundamental fairness thereby shocking the universal sense of justice; (2) whether the evidence showed entrapment as a matter of law regarding all counts of Middle District of Pennsylvania Criminal Nos. 85–00006 and 85–00049; (3) whether the court erred in refusing to instruct the jury in the due process defense; (4) whether the court erred in allowing the prosecution to conduct redirect examination of Agent Kirkland, thereby eliciting testimony regarding illegal activity by the Thomas and Hartranft Fur Company prior to the start of the investigation.

In considering the motion for judgment of acquittal, the trial court's function is not to weigh the evidence nor to determine credibility. The jury's verdict must be sustained if, after considering the evidence in a light most favorable to the Government, a reasonable-minded jury could conclude from the admissible evidence that the defendant is guilty beyond a reasonable doubt. *United States v. Jones,* 430 F.Supp. 219 (W.D.Pa.1977) *aff'd* 591 F.2d 1337 (1977). The only ground which may properly be raised in support of a motion for judgment of acquittal is that the evidence presented was insufficient as a matter of law to support the conviction. *United States v. Cohen,* 455 F.Supp. 843 (E.D. Pa.1978), *aff'd,* 594 F.2d 855, *cert. denied,* 441 U.S. 947, 99 S.Ct. 2169, 60 L.Ed.2d 1050 (1979). Whether to grant a motion for a new trial is entrusted to the sound discretion of the district court.

■ The United States Supreme Court has recognized on various occasions that law enforcement officers may infiltrate criminal enterprises, that they may supply items of value to illegal entrepreneurs and that they may resort to deceit without defeating the prosecution. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1972). The Court in *Russell* also noted that, for conduct of law enforcement agents to be in violation of the due process rights as to be an absolute bar to the Government from invoking judicial process, such conduct must be outrageous. *Russell* at 431, 93 S.Ct. at 1642. The defendant alleges that, even where a defendant pleads entrapment and may be predisposed

to commit the offense, if the Government's conduct is outrageous the prosecution of a defendant would violate due process. He cites in support of his argument *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978) and *Green v. United States,* 454 F.2d 783 (9th Cir.1971).

The Government's involvement is substantially less and the defendant's involvement substantially more than was the case in *Twigg.* While the Government agents made known to the defendant that they were interested in purchasing certain animal parts and, in fact, advised defendant on several occasions that certain sales were violative of the law, defendant continued to initiate contact with the agents with an offer to sell various animal parts. The defendant was not coaxed in any way to commit the crimes with which he was charged and he had not shown any reluctance to engage in the activity. He was not in any way overcome by repeated agent persuasion. The Government's conduct was not so outrageous as to violate fundamental fairness.

■ The entrapment defense requires an absence of predisposition on the part of the defendant to commit the crime. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Whether predisposition is present is a question of fact and must be properly submitted to the jury. *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978). Entrapment as a matter of law exists only when there is undisputed testimony making it patently clear that an otherwise innocent person was induced to commit the act complained of by trickery, persuasion or fraud of a Government agent. *United States v. Rangel,* 534 F.2d 147, 149 (9th Cir.1976), *cert. denied,* 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976).

It was not unreasonable for the jury to conclude beyond a reasonable doubt that the defendant was predisposed to commit the crimes charged. First, the defendant had a prior conviction for illegal dove hunting and trapping violations. This showed a predisposition to violate hunting and trapping laws. Secondly, on February 10, 1983, the defendant brought up the subject of selling hawk tallons to the agents. The

defendant was advised that such sales were illegal under federal law. Sometime later the defendant again raised the issue with the Government's agents as to their interest in buying hawk tallons. Each of these inquiries were unsolicited. In November of 1984, the defendant made two unsolicited proposals for the sale of explosives. There were many occasions throughout the years of contact with the Government agents in which defendant initiated illegal activities. Viewing the evidence in the light most favorable to the Government and resolving all inferences therefrom in its favor, it can be said that a reasonable jury could conclude beyond a reasonable doubt that the defendant was predisposed to engage in criminal activity.

■ The defendant alleges that this court should have permitted the jury to determine the due process defense. In *U.S. v. Twigg,* 588 F.2d at 379, the Court of Appeals held that where the facts can easily be resolved, the validity of the defense is to be decided by the trial court. When the facts concerning the nature of the police conduct are disputed it is unclear whether a jury resolution of the issues is required prior to a ruling by the court. 588 F.2d at 379, n. 8, *citing United States v. Johnson,* 565 F.2d 179, 181 (1st Cir.1977). The facts surrounding the Government's conduct in this case were not in substantial dispute. This court did not err in refusing to instruct the jury on the due process defense.

■ The defendant contends that the court's admission of Agent Kirkland's testimony on redirect examination that the Government had received information that Thomas and Hartranft Fur Company was engaged in illegal conduct prior to the beginning of the investigation was improperly admitted because it was irrelevant and hearsay. The cross-examination of Agent Kirkland was designed to show an improper motive or intent on the part of the agent in initiating the investigation. To refute any conclusion of improper motive or intent the Government on redirect examination attempted to show that the Government had information to believe that the fur company for which defendant worked was engaged in illegal activity. Agent Kirkland's statement was not introduced to

prove the truth of the matter asserted—that Thomas and Hartranft were engaged in illegal activity. It was introduced to show Kirkland's state of mind, that is, to show his intent or motive for the investigation. Agent Kirkland's testimony on redirect was neither hearsay nor irrelevant.

Defendant's motions for judgment of acquittal and for new trial will be denied.

## ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant's Motions for New Trial and Judgment of Acquittal are denied.

2. 16 U.S.C. § 707(b)(2) is deemed in violation of the fifth amendment to the United States Constitution.

3. The indictments brought pursuant to the Migratory Bird Treaty Act are dismissed:

Criminal No. 85–00006 Counts 1 through 15

Criminal No. 85–00049 Count 1

The defendant is to appear for sentencing pursuant to 18 U.S.C. §§ 842(h) and 844(a) and 2. Sentencing is hereby scheduled for 1:30 p.m. on Monday, November 25, 1985 in Courtroom No. 2, Ninth Floor, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania.