IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34056-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WENDELL L. MUSE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Wendell Muse appeals his conviction for possession of

methamphetamine. He argues that RCW 69.50.4013 violates the Eighth and Fourteenth

Amendments to the United States Constitution because it makes it a felony to possess

drug residue without a culpable mental state. He also challenges the constitutionality of

the trial court's reasonable doubt instruction. We disagree with his arguments and affirm.

FACTS

On April 14, 2015, Mr. Muse returned to his apartment after receiving a call that it

was on fire. Officer Holly Baynes responded to the fire. She asked Mr. Muse for

identification. She ran his identification in the law enforcement database and learned that

Mr. Muse had an outstanding arrest warrant. She then arrested Mr. Muse and searched

him incident to arrest. She found a glass pipe in his pocket and noticed a white powdery substance in the bowl part of it.

The State charged Mr. Muse with possession of methamphetamine. At trial, the scientist from the Washington State Patrol Crime Laboratory testified that he received the pipe and it had a "white residue" in it. Report of Proceedings (RP) at 30. He testified he analyzed the white residue and determined it contained methamphetamine.

Mr. Muse claimed the pipe belonged to his girlfriend, and he had placed the pipe in his pocket because he was worried about her drug use. His defense was that he did not know there was any methamphetamine in the pipe.

The trial court instructed the jury regarding the State's burden of proof and reasonable doubt. The trial court gave an instruction based on *Washington Pattern Jury Instruction: Criminal* (WPIC) 4.01 in defining reasonable doubt:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers (CP) at 11. Mr. Muse did not object to this instruction.

The jury convicted Mr. Muse, and he filed a timely appeal.

2

## ANALYSIS

A.    CONSTITUTIONALITY OF RCW 69.50.4013

Mr. Muse argues that RCW 69.50.4013 violates the Eighth Amendment to the United States Constitution's prohibition of cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process because it makes possession of drug residue a felony without requiring any culpable mental state.

RCW 69.50.4013 makes it unlawful to possess a controlled substance without a valid prescription or as otherwise authorized. This statute prohibits possessing *any* amount of a controlled substance, including residue. *State v. Schmeling*, 191 Wn. App. 795, 797 n.2, 365 P.3d 202 (2015). This statute also contains no mens rea requirement. *State v. Bradshaw*, 152 Wn.2d 528, 539, 98 P.3d 1190 (2004).

This court reviews the constitutionality of a statute de novo. *Schmeling*, 191 Wn. App. at 798. A statute is presumed to be constitutional, and the party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. *Id.*

### 1.    *Eighth Amendment Challenge*

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. There are two types of Eighth Amendment analyses:

3

(1) determining whether a sentence is disproportionate to the particular crime, and

(2) using categorical rules to define constitutional standards for certain classes of crimes

or offenders. *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 176 L. Ed. 2d 825

(2010) (holding that juvenile offenders cannot be sentenced to life imprisonment without

parole for nonhomicide offenses). The categorical analysis addresses whether a particular

punishment is categorically unconstitutional given the nature of the offense or the

characteristics of the offender. *Id.* at 60. The categorical analysis involves two steps: the

court first determines "whether there is a national consensus against the sentencing

practice at issue," and if so, the court then exercises its own independent judgment in

determining whether the punishment is unconstitutional in light of the culpability of the

offenders and the severity of the punishment. *Id.* at 61, 67. Mr. Muse brings his Eighth

Amendment challenge solely under the categorical analysis.

Division Two of this court recently addressed an identical Eighth Amendment

categorical challenge to RCW 69.50.4013 in *Schmeling*, 191 Wn. App. at 799-800. Like

Mr. Muse argues in this case, Mr. Schmeling also argued that *Graham* required the court

to find RCW 69.50.4013 unconstitutional as applied because it makes possessing drug

residue without any culpable mental state a felony. *Id.* at 800-01. The *Schmeling* court

rejected this argument, reasoning that the United States Supreme Court has only applied

4

the Eighth Amendment categorical analysis to death penalty cases and cases involving life imprisonment for juveniles. *Id.* at 800. Because *Graham* "did not hold or even suggest that the categorical approach should be applied to all adult sentences under the Eighth Amendment," the *Schmeling* court declined to apply it to punishment of adult drug offenders in the absence of any authority extending it to cases not involving the death penalty or juvenile offenders. *Id.*

Mr. Muse acknowledges *Schmeling* but argues it was wrongly decided for two reasons. He first argues that *Schmeling* erroneously cited *State v. Witherspoon*, 180 Wn.2d 875, 329 P.3d 888 (2014) for the proposition that the Washington Supreme Court has "rejected the categorical approach for adult offenders in non-capital cases." Br. of Appellant at 15. The *Schmeling* court actually cited *Witherspoon* for the proposition that "the holding in *Graham* was based on the difference between juveniles and adults and the propriety of sentencing juveniles to life in prison." *Schmeling*, 191 Wn. App. at 800 (citing *Witherspoon*, 180 Wn.2d at 890). This was correct. *See Witherspoon*, 180 Wn.2d at 890.

Mr. Muse also argues that other jurisdictions have applied the categorical analysis to adult sentences that do not involve the death penalty. He cites several examples. *See United States v. Williams*, 636 F.3d 1229, 1233-34 (9th Cir. 2011) (lifetime supervised

5

release is constitutional as applied to adult sex offenders); *Illinois v. Brown*, 2012 IL App (1st) 091940, ¶¶ 58-76, 967 N.E.2d 1004, 359 Ill. Dec. 974 (mandatory life without parole is constitutional as applied to developmentally disabled adult convicted of murder under accomplice liability); *Iowa v. Oliver*, 812 N.W.2d 636, 641-47 (Iowa 2012) (mandatory life without parole is constitutional as applied to adult convicted of second statutory rape offense); *Kansas v. Mossman*, 294 Kan. 901, 925-30, 281 P.3d 153 (2012) (mandatory lifetime supervision is constitutional as applied to first-time adult sex offenders).

There is a split of authority—including a split between federal circuits—on the issue of whether the Eighth Amendment categorical analysis applies to cases not involving the death penalty or life sentences for juveniles. *See Mossman*, 294 Kan. at 926-27 (highlighting this split of authority). Because the authorities Mr. Muse cites are not binding, we agree with *Schmeling*'s persuasive reasoning and similarly decline to extend the categorical analysis here.[1]

---

[1] The *Schmeling* court also noted that even if the categorical analysis was applicable, Mr. Schmeling failed to demonstrate a national consensus against punishing the possession of drug residue as a felony. *Schmeling*, 191 Wn. App. at 800 n.4. The *Graham* court reasoned that 39 of 50 states did not impose a life without parole sentence for nonhomicide juvenile offenses. *See Graham*, 560 U.S. at 64. Here, Mr. Muse points to only 18 of 50 states that do not impose a felony sentence for possessing drug residue without a culpable mental state. *See* Br. of Appellant at 7-8.

2. *Due Process Challenge*

Mr. Muse also raises a due process challenge to RCW 69.50.4013. *Schmeling* held

that RCW 69.50.4013 does not violate due process even though it makes possession of

drug residue a felony without requiring any culpable mental state. *Schmeling*, 191 Wn.

App. at 800-01. The *Schmeling* court reasoned that the legislature has wide latitude to

create strict liability crimes that do not include a culpable mental state, and that the

Washington Supreme Court has repeatedly stated that the legislature has this authority.

*Id.* The court further reasoned that the Washington Supreme Court has considered

whether the possession of a controlled substance statute contains a mens rea element

twice, and it concluded both times that the legislature intentionally omitted a mens rea

element and also declined to imply the existence of those elements. *Id.* at 801 (citing

*Bradshaw*, 152 Wn.2d at 534-38; *State v. Cleppe*, 96 Wn.2d 373, 380-81, 635 P.2d 435

(1981)).

Mr. Muse acknowledges *Schmeling* but asks this court not to follow it. He argues

that *Cleppe* and *Bradshaw* were only decided on principles of statutory construction and

are not controlling on the question of whether the lack of a mens rea for possession

violates due process. Mr. Muse is correct, but this does not undermine the *Schmeling*

court's reasoning. The *Schmeling* court's central point was that a due process challenge

to strict liability crimes lacks historical support in both the United States Supreme Court and in Washington courts.

Mr. Muse argues that the *Schmeling* court "failed to articulate a framework for analyzing due process challenges to strict liability crimes," but this was because Mr. Schmeling failed to cite any Washington precedent for such a challenge. Br. of Appellant at 16. Although Mr. Schmeling cited several cases from other jurisdictions holding that strict liability offenses violate due process, the *Schmeling* court found them unpersuasive in light of our Supreme Court's repeated approval of the legislature's authority to adopt strict liability crimes and the express findings in *Bradshaw* and *Cleppe* that the possession statute contains no mens rea element. *See Schmeling*, 191 Wn. App. at 802. Because Mr. Muse cites the same cases from other jurisdictions that Mr. Schmeling did, we find his argument unpersuasive.

B. REASONABLE DOUBT INSTRUCTION

Mr. Muse argues, for the first time on appeal, that the trial court's reasonable doubt instruction violated his rights to a jury trial and due process. Specifically, he contends the language instructing the jury members that they must "have an abiding belief in the truth of the charge" improperly encouraged the jury to undertake a search for "the truth." Br. of Appellant at 17.

8

A party generally waives an issue on appeal when he or she fails to raise the issue at trial. RAP 2.5(a). An exception exists for a claim of manifest error affecting a constitutional right. RAP 2.5(a)(3). This exception applies if: (1) the alleged error is truly of a constitutional magnitude, and (2) the error is manifest. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015).

### 1. *Constitutional magnitude*

Mr. Muse meets the first part of the RAP 2.5(a)(3) test. Whether an instruction misstates reasonable doubt is an issue of constitutional magnitude. *Kalebaugh*, 183 Wn.2d at 584.

### 2. *Manifest error*

An error is manifest if it had practical and identifiable consequences at trial. *Id.* And an error is practical and identifiable if, at the time the error was made, the "trial court should have known" of the error. *Id.* As explained below, there was no error, much less "manifest error."

Our Supreme Court has expressly approved WPIC 4.01 as a correct statement of the law and has directed trial courts to exclusively use it to instruct juries on the burden of proof and the definition of reasonable doubt. *See State v. Bennett*, 161 Wn.2d 303, 318,

9

165 P.3d 1241 (2007). Our Supreme Court has also specifically approved the "abiding belief in the truth" language. *State v. Pirtle*, 127 Wn.2d 628, 658, 904 P.2d 245 (1995).

In arguing that the trial court's reasonable doubt instruction impermissibly encouraged the jury to undertake a search for "the truth," Mr. Muse cites *State v. Emery*, 174 Wn.2d 741, 278 P.3d 653 (2012). In *Emery*, the prosecutor told the jury in closing argument that its verdict needed to "'speak the truth'" and then asked the jury to "'speak the truth'" by finding the defendants guilty. *Id.* at 751. The *Emery* court held that these statements were improper because it is not the jury's role to determine the truth of what happened. *Id.* at 760. Rather, the jury's role is to determine whether the State has proved its case beyond a reasonable doubt. *Id.*

Mr. Muse argues that WPIC 4.01's "belief in the truth" language is similar to the prosecutor's impermissible "speak the truth" remarks at issue in *Emery*. However, Divisions One and Two have expressly rejected this argument, reasoning that WPIC 4.01's "belief in the truth" language, when read in context, accurately informs the jury that its role is to determine whether the State has proved its case beyond a reasonable doubt. *See State v. Jenson*, 194 Wn. App. 900, 902, 378 P.3d 270, *review denied*, __ P.3d __, 2016 WL 7166674; *State v. Fedorov*, 181 Wn. App. 187, 199-200, 324 P.3d 784, *review denied*, 181 Wn.2d 1009, 335 P.3d 941 (2014); *see also State v. Kinzle*, 181 Wn.

10

App. 774, 784, 326 P.3d 870 (reasoning that the "belief in the truth" language "merely elaborates on what it means to be 'satisfied beyond a reasonable doubt'"), *review denied*, 181 Wn.2d 1019, 337 P.3d 325 (2014). While the prosecutor's remarks in *Emery* suggested that the jury's role was to solve the case, the "belief in the truth" language in WPIC 4.01 correctly invites the jury to weigh the evidence. *Jenson*, 194 Wn. App. at 902.

Mr. Muse acknowledges these cases but argues they were wrongly decided because Divisions One and Two wrongly relied on *Bennett*, 161 Wn.2d 303 and *Pirtle*, 127 Wn.2d 628. He first argues that the defendants in *Bennett* and *Pirtle* argued *in favor* of WPIC 4.01. While this is true, it is unclear why this is relevant—it does not change the *Bennett* court's approval of WPIC 4.01 or the *Pirtle* court's approval of WPIC 4.01's "belief in the truth" language.

Mr. Muse also argues that the defendants in *Bennett* and *Pirtle* never challenged the constitutionality of the "belief in the truth" language. This is also true, but Divisions One and Two never cited *Bennett* or *Pirtle* for this proposition. Rather, Divisions One and Two reasoned that the "belief in the truth" language, when read in context, accurately informs the jury of its role, invites the jury to weigh the evidence, and does not ask the jury to solve the case.

11

Although Mr. Muse highlights several differences between *Bennett* and *Pirtle* and the cases from Divisions One and Two, he ultimately fails to explain how Division One's and Division Two's reasoning is wrong. Accordingly, he fails to establish the trial court's reasonable doubt instruction was error, much less *manifest* error.

C.    APPELLATE COSTS

Mr. Muse also asks this court to decline to impose appellate costs in its decision terminating review.

An appellate court has discretion to require a convicted defendant to pay appellate costs to the State. *See* RCW 10.73.160(1); RAP 14.2. Generally, "the party that substantially prevails on review" will be awarded appellate costs, unless the court directs otherwise in its decision terminating review.[2] RAP 14.2. An appellate court's authority to award costs is "permissive," and a court may, pursuant to RAP 14.2, decline to award costs at all. *See State v. Nolan*, 141 Wn.2d 620, 628, 8 P.3d 300 (2000).

On June 10, 2016, this court issued a "General Court Order" (General Order) regarding defendants' requests to deny cost awards when the State substantially prevails

---

[2] "A 'prevailing party' is any party that receives some judgment in its favor. If neither party completely prevails, the court must decide which, if either, substantially prevailed." *Guillen v. Contreras*, 169 Wn.2d 769, 775, 238 P.3d 1168 (2010) (citations omitted) (quoting *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997)). Here, the State is the substantially prevailing party.

on appeal. It directs defendants who want this court to exercise its discretion not to impose appellate costs to make their request, together with citations to legal authority and references to relevant parts of the record, either in their opening brief or in a motion pursuant to RAP 17. Mr. Muse has complied with this particular requirement in his opening brief.

If inability to pay is a factor alleged to support the defendant's request, the General Order also requires defendants to include in the appellate record the clerk's papers, exhibits, and the reports of proceedings relating to the trial court's determination of indigency and the defendant's current or likely ability to pay discretionary legal financial obligations. Mr. Muse designated the trial court's order of indigency with the clerk's papers and the transcript of his sentencing hearing.[3] However, the General Order requires defendants to file a report as to continued indigency with this court no later than 60 days after they file their opening briefs. Although Mr. Muse's opening brief was filed one month after the General Order went into effect, Mr. Muse has not complied with this requirement. Because Mr. Muse has not complied with the court's General Order, we will not exercise our discretion to waive appellate costs.

---

[3] The transcript indicates that Mr. Muse is capable of working and has worked his entire life, but also indicates that he was unemployed at the time of sentencing and also lost many of his possessions in the house fire.

Mr. Muse asks this court to not impose appellate costs because the trial court found him indigent for purposes of appeal. While orders of indigency entered pursuant to RAP 15.2 allow criminal defendants to pursue appeals at public expense, they do not prevent the State from attempting to recoup costs if the defendant's appeal is unsuccessful. *See generally State v. Obert*, 50 Wn. App. 139, 143, 747 P.2d 502 (1987).

Mr. Muse also asks this court to not impose appellate costs because the problems recognized in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) apply equally to appellate costs. However, unlike RCW 10.01.160(3), which was at issue in *Blazina*, the statute authorizing appellate costs does not require an inquiry into the defendant's financial resources before appellate costs are imposed. *See* RCW 10.73.160; *State v. Sinclair*, 192 Wn. App. 380, 389, 367 P.3d 612, *review denied*, 185 Wn.2d 1034, 377 P.3d 733 (2016). This argument, while persuasive, is an appeal to this court's discretion, the exercise of which this court has already delineated in its General Order.

Because Mr. Muse has not complied with this court's General Order, we tentatively award costs to the State as the substantially prevailing party on appeal. But should Mr. Muse file a statement that comports with our June General Order within 14 days of the filing of this decision, we direct our commissioner to allow the late statement

No. 34056-2-III
*State v. Muse*

and consider his motion. If Mr. Muse does not file such a statement within 14 days, the State thereafter has 10 days to file a cost bill with this court pursuant to RAP 14.4(a).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

I CONCUR:

Pennell, J.

No. 34056-2-III

FEARING, C.J. (concurring) — I concur in all rulings of the majority. I write
separately because I question the soundness of the ruling that finding a person guilty of
possession of a controlled substance, when authorities capture one with a minute amount
of the controlled substance, does not violate the due process clause.

The majority grounds its ruling, in response to Wendell Muse's due process claim,
on *State v. Schmeling*, 191 Wn. App. 795, 365 P.3d 202 (2015). In *Schmeling*, this court
held that convicting an accused under RCW 69.50.4013, the possession of controlled
substance statute, does not violate the due process clause.

When rejecting a due process challenge to the controlled substance act, the
*Schmeling* court relied on *State v. Bradshaw*, 152 Wn.2d 528, 532, 98 P.3d 1190 (2004)
and *State v. Cleppe*, 96 Wn.2d 373, 635 P.2d 435 (1981). In each decision, our state high
court held that the State need not show any mens rea under RCW 69.50.4013. In
*Bradshaw*, the court also addressed a constitutional challenge from Donald Bradshaw and
coappellant by writing:

Defendants argue that *Cleppe*'s interpretation of the mere possession statute is unconstitutional because the statute is vague, criminalizes innocent behavior, and adversely affects the right to intrastate and interstate travel. Defendants also contend that the doctrine of dominion or control is unconstitutionally vague.

The party asserting that a statute is unconstitutionally vague must prove vagueness beyond a reasonable doubt. *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988). Defendants fail to meet this standard and offer little analysis to support any of their constitutional arguments. As the Court of Appeals stated:

> Bradshaw and Latovlovici also assert that without a scienter element, RCW 69.50.401 is unconstitutionally vague and violative of substantive due process principles. But they have not adequately briefed these arguments. They fail to explain how persons of ordinary intelligence would not understand what the statute prohibits, nor do they cite any relevant authority to show how the statute violates substantive due process. Such "'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'"

[*State v.*] *Bradshaw*, [117 Wn. App. 1019], 2003 WL 21322200, at *2, 2003 Wash. App. LEXIS 1142 [*aff'd*, 152 Wn.2d 528] (quoting *In re Pers. Restraint of Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986) (quoting *United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir.1970))).

*State v. Bradshaw*, 152 Wn.2d at 539.

In *State v. Cleppe*, the high court also held that neither intent nor guilty knowledge is an element of the crime of possession of a controlled substance. The court did not entertain any constitutional argument.

*State v. Schmeling*'s reliance on the two Supreme Court decisions is shaky. *Bradshaw* summarily dismissed the due process challenge principally because of inadequate briefing, cleverly characterized as naked castings. *Cleppe* does not answer any due process question.

2

In *State v. Schmeling*, the defendant cited *United States v. Wulff*, 758 F.2d 1121 (6th Cir. 1985), and *Louisiana v. Brown*, 389 So. 2d 48 (La. 1980), wherein the respective courts reversed, on constitutional grounds, convictions of crimes without a mens rea. In his brief, Wendell Muse cites numerous foreign decisions, wherein the respective courts held that one cannot be convicted of possession when found with trace amounts of a controlled substance or when one lacks knowledge of his or her possession.

I would welcome our state high court thoroughly addressing whether convicting one of possession of a controlled substance, when one unknowingly possesses trace amounts of the substance, violates either the state or federal due process clause. In the meantime, I will follow our holding in *State v. Schmeling*.

Fearing, C.J.

3