LEWIS WILSON TUCKER, Appellant, v. THE STATE OF DELAWARE, Appellee.

(*January* 3, 1963.)

SOUTHERLAND, Chief Justice, and WOLCOTT, Justice, and SHORT, Vice Chancellor, sitting.

*Theodore N. Sandstrom* and *Wilfred J. Smith, Jr.* (of Smith and Gentile) for appellant.

*E. Norman Veasey*, Deputy Attorney-General, for appellee.

Supreme Court of the State of Delaware, No. 38, 1962.

SOUTHERLAND, Chief Justice.

On the morning of September 1, 1960, the partly-clad body of a young woman was found in an old farm lane leading from Creek Road near Newark, Delaware. The area is a wooded section with dense undergrowth. The police were

notified and the body was removed to Memorial Hospital. It was later identified as that of Gertrude Perkins, who lived with her parents and sisters in Newark. She had been missing since the evening of August 30.

The young woman had been subjected to brutal violence. In addition to external injuries around the face and head, and fracture of four ribs, there was a large ragged laceration in the perineum region (the space between the vulva and the anus), caused by the insertion into the body of some foreign object. The weapon (if it may be so called) had extended into the body for about ten inches. Death had resulted from hemorrhage and shock. Putrefaction had set in. The examining physician was of opinion that death had occurred within 48 hours—presumably on August 30.

Suspicion fell upon the defendant Lewis Tucker. He was 27 years old and lived with his parents and brothers on Ray Street in Newark. Since 1951 he and Gertrude Perkins had been sweethearts. He was questioned by the police. He admitted that he and Gertrude had been together on the evening of August 30. They had driven to Chester with his brother Pearlie (or Pete) in Pearlie's car. On their return to Newark, according to Lewis' statement, Lewis walked with Gertrude part of the way to her home, then kissed her goodnight, left her, and returned home himself.

No further evidence involving Lewis was forthcoming, and the case lay dormant until July of the following year.

In the meantime Lewis confessed the crime to his brother James, a lad of 15. About a month after the murder Lewis and James were occupying a bed room on the third floor of their house. Lewis admitted that on their return from Chester on the night of August 30 he took Gertrude to the Creek Road in Pearlie's car, and then walked up the hill (*i.e.* the lane). Lewis said that he hit her with his fist and killed her with a stick. Lewis also told James that he had taken Gertrude's

purse and some clothing, and had hidden the purse in the chimney and the clothing in the basement.

James did not report the confession to the police because (as he later testified) he did not wish to "turn him [Lewis] in".

In July 1961 Lewis and three of his brothers went to Chester. Lewis and Pearlie had an argument and got into a fight. The others broke it up. Lewis told Pearlie he was going to get him (Pearlie) for a murder, told James he was going to get him (James) for destroying evidence, and told Joe he was going to get him "about a couple weeks".

On July 16, 1961 (probably the day after the fight) Lewis visited the police station and made a statement in which he in effect charged Pearlie with the crime and attributed to Pearlie the hiding of the purse and clothing. He then accompanied the officers to the Tucker home on Ray Street. Mr. and Mrs. Tucker were there. Mrs. Tucker agreed to let them search for Gertrude's purse and shoes. When Mrs. Tucker learned that the things were believed to be Gertrude's, she turned to Lewis and said: "Lewis, why do you want to blame this on your brother Pete? You know he didn't have anything to do with it." Lewis made no reply.

The admission at the trial of testimony respecting this incident is the subject of the first claim of error.

Thereafter Pearlie and James were taken into custody. At the police station, when James learned that his brother Pearlie was charged with the murder he broke down and told the police of Lewis' confession. After taking his statement the police brought in Lewis. James said to Lewis, "Lewis, I have always liked you. I didn't want to have to do this but you shouldn't have tried to blame this on Pete." Lewis (according to James' testimony) replied: "James, you know I never told you that."

The admission of testimony respecting this incident is the subject of the second claim of error.

Lewis was thereafter arrested and indicted for the murder.

At the trial James testified to Lewis' confession and Pearlie (Pete) denied Lewis' account of his (Pearlie's) movements on the night of the murder. Two sisters of Gertrude Perkins testified that about three weeks before the murder Lewis and Gertrude had had a quarrel that resulted in a fight. Lewis said: "I am going to get you." Evidence was also produced tending to show premeditation and intent to kill on the part of Lewis. He was found guilty of murder in the first degree.

He asserts error in four particulars:

1. It is said that his silence after the statement of his mother to him in the Tucker home proved nothing, because that statement was not accusatory. Its admission was prejudicial, he claims, because it tended to show that his own mother believed him a liar.

It is somewhat doubtful that the mother's statement was clearly accusatory, though perhaps the jury might have thought so. But even if its admission was technically in error under the decision in *Mezzatesta v. State*, 3 Storey 145, 166 A. 2d 433, yet it was wholly harmless. The argument that an accusation from his own family was prejudicial has no force. Both of his brothers testified against him in open court.

2. The testimony respecting the confrontation at the police station has no evidentiary value, for Lewis denied the accusation.

But again the error was harmless. James was the principal witness against his brother, and the colloquy at the police station loses all importance.

3. The third claim of error is that photographs

of the scene of the crime and of the victim's body were erroneously admitted in evidence. It is argued that they were gruesome and shocking and likely to influence the jury. The admission of such photographs is generally in the discretion of the trial court. *Wisniewski v. State*, 1 Storey 84, 51 Del. 84, 138 A. 2d 333. Of course, if it can be shown that gruesome photographs have little if any relevancy to the proof of this crime, they should be excluded. In this case four of the six photographs really showed nothing more than the terrain which was the scene of the crime and the lane that led to it. The other two, showing the serious injuries to the body of the murdered woman, may justly be said to be shocking, but they were relevant. They tended to show, more effectively than oral testimony could, the deliberate vicious cruelty with which the murderer dispatched his victim. They tended to rebut any suggestion that the killing was done in a sudden fit of jealous rage. They were therefore admissible.

■ 4. The last point is that the court's charge on direct evidence was erroneous.

The charge complained of is as follows:

"In this case the State has introduced evidence that the accused confessed to his brother that he committed the alleged murder.

"A confession is customarily considered by the Courts as direct evidence rather than circumstantial evidence.

"When a State's case is in part circumstantial and in part direct, as this case, you may consider the direct evidence independent of the State's circumstantial evidence. If after due consideration af all contrary evidence such direct evidence satisfies you beyond a reasonable doubt that the accused committed the alleged murder, then you may find him guilty on the direct evidence alone. In addition, you may consider the State's circumstantial evidence in conjunction with the direct evidence."

Defendant's argument that the charge is erroneous is difficult to follow, but we understand that it proceeds as follows:

(1) A conviction may not be had upon a confession alone, without proof of the *corpus delicti;* (2) the court referred to the defendant's confession as direct evidence; (3) the court followed this reference with a charge that defendant could be convicted on the direct evidence alone; from which a jury might well infer that it could convict on the confession alone.

To this sequence (correct enough) the defendant attempts to draw the conclusion that the jury could believe that it could convict without proof of the *corpus delicti.*

This argument approaches the absurd. It would have been not only superfluous but confusing for the court to charge the jury on *corpus delecti.* No such issue was in the case, for the *corpus delicti*—the murder— had been proved beyond any possibility of doubt.

The examination of the record in this case shows that the defendant was justly convicted, and that there is no reversible error.

The judgment below is affirmed.