THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY BILLINGSLEY, Defendant-Appellant.

Second District   No. 2—87—0851

Opinion filed June 6, 1989.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Theodore A. Gottfried and Patrick J. Hughes, both of State Appellate Defender's Office, of Springfield, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Following a jury trial in Kane County, defendant, Rodney Billingsley, was convicted of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) and theft (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(d)(1)). Defendant was sentenced to two years' probation under the supervision of Treatment Alternatives to Street Crimes (TASC). Defendant filed a timely notice of appeal. We affirm in part and reverse in part.

On September 4, 1986, Enss Mitchell returned to his home in Aurora around 11:45 a.m. He discovered the downstairs door broken open and the house in "total disarray." Mitchell testified that he immediately noticed that his two video recorders were missing. He also discovered one video recorder missing from his father's bedroom. Mitchell stated that he sold electronic equipment for a living and placed a value of $1,450 on the missing video recorders. Mitchell further testified that he called the police department shortly after he arrived home.

Officer David Tinsley of the Aurora police department testified at trial. Officer Tinsley testified that he responded to a call concerning a

burglary at the Mitchell residence. Officer Tinsley observed a downstairs window open, with the screen pushed in from the outside. It was Officer Tinsley's opinion that the window was used as an entry point to the house. He also observed a door leading into the downstairs section of the house kicked open.

Officer Gregory Anderson of the Aurora police department also testified at trial. Officer Anderson stated that he received a telephone call on September 4, 1986, from a confidential informant, telling him that defendant and another person "had stolen several VCRs and a reel-to-reel tape deck the night before" and were storing them in the trunk of a white Buick automobile. The informant also provided the location of the automobile. Officer Anderson stated that he drove his unmarked squad car over to the location and observed the white Buick. He indicated that he was informed of the Mitchell burglary by radio dispatch while he was en route to set up surveillance on the white Buick. Officer Anderson further testified that he observed a car pull up to the Buick and transfer boxes into the trunk of the Buick. Defendant was identified as one of the persons who transferred the boxes. Defendant was arrested a short distance from the Buick. Officer Anderson later determined that the Buick was registered to defendant. Officer Anderson indicated that the Buick was towed to the police station, and a search warrant was obtained to search the trunk.

Officer Marshall Gauer of the Aurora police department testified that he executed the search of the trunk and recovered electronic equipment taken from the Mitchell home and from other burglaries. However, the items found in the trunk were not dusted for fingerprints.

Officer Larry Langston of the Aurora police department also testified at trial. Officer Langston stated that he interviewed defendant at the Aurora police department on September 4, 1986. After he read defendant his *Miranda* rights, he questioned defendant about the items found in the trunk. Officer Langston testified that defendant stated that he bought the items from a person named Jessie, and that he knew the items were stolen. It was defendant's intention to buy the items cheaply and resell them at a profit. Defendant denied any involvement in the burglaries.

Jacqueline Fracaro, a forensic scientist for the Illinois Department of State Police, testified that she examined the latent finger and palm prints taken from the Mitchell residence. She also examined defendant's print card taken shortly after his arrest. It was Fracaro's opinion that the prints taken from the Mitchell residence matched those

on defendant's print card.

Defendant's brother, Eric Greene, testified at trial. Greene stated that, on September 3, 1986, he saw a car pull up to the white Buick and transfer some boxes into the trunk of the Buick. One of the passengers saw Greene looking out of the window and asked him if defendant was home. Greene stated that defendant was not home, and the car left. Greene testified that he went to bed and awoke on September 4, 1986, at approximately 10 a.m. Greene stated that defendant was home at this time. Greene further stated that defendant awoke at approximately 11:30 a.m. and went to get something to eat at a local restaurant. Shortly thereafter, Greene looked outside and saw defendant in police custody. Defendant's girlfriend, Estellita Gonzalez, along with some relatives of defendant, substantiated the testimony of Eric Greene.

Defendant was the last witness to testify at trial. Defendant stated that he bought the white Buick in May 1986, using $500 of his own money and a $700 loan from Jeff Washington to pay for the car. In August 1986, defendant sold the car to Washington because he was unable to pay off the loan. Defendant testified that he transferred the title to Washington and gave him the only set of keys to the car.

Defendant further testified that he was with his girlfriend from approximately 11 a.m. on September 3, 1986, until 2:30 a.m. on September 4, 1986. He stated that he went home to sleep and woke up at approximately 11:30 a.m. Defendant left his house with two friends and went to a local pool hall. Defendant was at the pool hall for 20 minutes and left the pool hall to talk with a person named "Jessie." Defendant stated that Jessie had two video recorders for sale. Defendant agreed to purchase both recorders for $125 and determined that he should put them in the trunk of the white Buick for storage. Defendant testified that he did not want to know how Jessie obtained the video recorders. Defendant stated that he was arrested shortly after putting the recorders in the trunk of the Buick. Defendant denied stealing the recorders, and further denied any role in the burglaries.

Following closing arguments, the jury returned a verdict finding defendant guilty of the offenses of residential burglary and theft. On August 7, 1987, defendant was sentenced to two years' probation under the supervision of TASC. This appeal followed.

On appeal, defendant contends that: (1) the trial court erred in admitting hearsay evidence concerning a police officer's conversation with a confidential informant; and (2) the jury verdicts were legally inconsistent such that defendant is entitled to a new trial.

■ Defendant first contends that the trial court improperly allowed the State to introduce hearsay testimony concerning the contents of a telephone conversation between a police officer and a confidential informant. Defendant argues that the admission of this testimony severely prejudiced him and requires reversal. The State responds by arguing that the testimony did not implicate defendant in the crime charged in the case at bar. In addition, the State contends that the testimony was not hearsay. The contested testimony is as follows:

"Q. And how did you [Officer Anderson] receive that information?

A. A confidential informant contacted me.

Q. And did you speak with that confidential informant personally?

A. Yes, I did.

Q. And what information did the confidential informant provide you with?

A. The confidential informant told me that Rodney Billingsley and Jeff Washington had stolen several VCRs and a reel-to-reel tape deck the night before and were storing it [*sic*] in the trunk of a car on Second Avenue."

In order for testimony to constitute hearsay, there must be testimony of an out-of-court statement offered to prove the truth of the matter asserted, with the value of the statement resting on the credibility of the person who made the out-of-court statement. (*People v. Rogers* (1980), 81 Ill. 2d 571, 577; *People v. Miles* (1988), 176 Ill. App. 3d 758, 763.) The purpose of the rule barring hearsay testimony is to "test the value of assertions by exposing the source of the assertion to cross-examination by the party against whom it is offered." *People v. Holman* (1984), 103 Ill. 2d 133, 148, *cert. denied* (1985), 469 U.S. 1220, 84 L. Ed. 2d 347, 105 S. Ct. 1204.

Defendant contends that the decisions in *People v. Johnson* (1987), 116 Ill. 2d 13, and *People v. White* (1985), 134 Ill. App. 3d 262, *cert. denied* (1986), 475 U.S. 1126, 90 L. Ed. 2d 194, 106 S. Ct. 1650, support his position that the admission of the testimony was reversible error. In *Johnson,* our supreme court held that the defendant's convictions for murder, conspiracy, and attempted armed robbery must be reversed because the trial court improperly admitted hearsay testimony which directly implicated the defendant in the crimes charged. (*Johnson,* 116 Ill. 2d at 29.) The testimony involved statements made by two codefendants to a police officer. The police officer testified at trial, but both codefendants asserted the privilege against self-incrimi-

nation and did not testify. The court stated that a police officer may testify as to the investigatory procedures used during the course of a criminal investigation without violating a defendant's right to confront witnesses. (116 Ill. 2d at 24.) However, the testimony cannot directly implicate the defendant in the crime at issue. (116 Ill. 2d at 24.) The supreme court reversed the defendant's convictions because the hearsay testimony identified him as the "gunman," thus directly implicating him in the crimes at issue.

In *White*, this appellate court determined that it was error, although not reversible error, for the court to allow testimony in which an anonymous phone caller named the defendant as a "perpetrator" of the crime he was on trial for committing. (*White*, 134 Ill. App. 3d at 282.) *White* also involved an alleged use of hearsay testimony concerning a conversation with a confidential informant. The confidential informant directly named the defendant, although he did not place the defendant at the scene of the crime. We held that this testimony was *not* hearsay because it did not directly link the defendant to the crime at issue, but instead simply provided an explanation for the police officer's subsequent investigatory procedures. *White*, 134 Ill. App. 3d at 282-83.

■ In the case at bar, defendant was charged with the September 4, 1986, burglary of the Mitchell residence. The confidential informant's phone conversation with Officer Anderson implicated defendant in a theft which occurred *the night before*. The informant did not implicate defendant in the Mitchell burglary. It appears that the statement was used to explain why Officer Anderson set up surveillance on the white Buick. Thus, we do not have a situation like that present in *Johnson*, because the confidential informant in no way implicated defendant in the crime he was charged with. Instead, our situation is similar to that found in *White*, in that the primary value of the statement was to explain why Officer Anderson set up a surveillance on the white Buick. Therefore, it is our opinion that the testimony was not hearsay, since it was used to explain the officer's investigatory procedures, and not used to prove the truth of the matter asserted. See *White*, 134 Ill. App. 3d at 282; *People v. Romo* (1980), 85 Ill. App. 3d 886, 897; *People v. Sanders* (1980), 80 Ill. App. 3d 809, 814.

■■ Furthermore, even if we were to agree with defendant's contention that the statement was hearsay, we believe that its admission was harmless in light of the evidence of defendant's guilt. The admission of hearsay testimony is harmless error where there is sufficient competent evidence to convict the defendant. (*People v. Gaines*

(1982), 88 Ill. 2d 342, 366, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.) Defendant's palm prints were found at the Mitchell residence, even though Enss Mitchell testified that he never met nor did he know defendant. In addition, Officer Anderson saw defendant place the proceeds of the burglary, the video recorders, into the trunk of the white Buick. Defendant was arrested shortly thereafter and in close proximity to the Buick. We believe the evidence fully supports defendant's conviction for residential burglary, even absent the alleged hearsay testimony.

Defendant next contends that the jury verdicts finding him guilty of both residential burglary and theft were logically inconsistent. As such, defendant asserts that his convictions must be reversed and the case remanded for a new trial. The State argues that a retrial on all counts is not necessary. Rather, the State asserts that the proper remedy is to vacate the theft conviction. Both parties agree that the recent supreme court decision in *People v. Schmidt* (1988), 126 Ill. 2d 179, controls the disposition of this issue. In *Schmidt*, the defendant was charged with residential burglary. However, the jury was instructed as to residential burglary and theft and found the defendant guilty of both offenses. The supreme court held that the conviction for theft "was improper and must be vacated." (*Schmidt*, 126 Ill. 2d at 183.) The court stated that theft was not a lesser included offense of burglary, and thus there should not have been any verdict as to the theft offense absent any charge of theft. 126 Ill. 2d at 183.

In the case at bar, defendant was charged solely with the offense of residential burglary. However, instructions were given to the jury on the offenses of both residential burglary and theft. We believe that under *Schmidt*, the instruction on theft was improperly given. Thus, the theft conviction must be vacated. However, this does not entitle defendant to a new trial on the residential burglary conviction. See *Schmidt*, 126 Ill. 2d at 183.

For the above-stated reasons, the judgment of the circuit court of Kane County convicting defendant of residential burglary is affirmed, and the conviction for theft is reversed.

Affirmed in part, reversed in part.

UNVERZAGT, P.J., and LINDBERG, J., concur.