Tyrone Lee **JOHNSON**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 9, 1989.
Rehearing en banc: May 15, 1990.
Decided: March 5, 1991.

Nancy Jane Perillo, Asst. Public Defender, Wilmington, for appellant.

Timothy H. Barron, Deputy Atty. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, WALSH, and HOLLAND, JJ., and ALLEN, Chancellor, constituting the Court en banc.

CHRISTIE, Chief Justice.

The opinion in this case dated January 11, 1990, which was released after argument before a panel of three justices and which affirmed Tyrone Johnson's convictions, is withdrawn. The following opinion of the Court *en banc* is substituted.

Johnson appeals his convictions in Superior Court for possession of a controlled substance with the intent to deliver and conspiracy in the second degree, in violation of 16 *Del.C.* § 4751(a)[1] and 11 *Del.C.* § 512.[2] He was convicted of these charges following a jury trial on February 11, 1988. He raises three contentions on appeal. First, he argues that the trial court erred in denying a motion for a mistrial when it became evident that a prosecution witness was not telling the truth during testimony. Secondly, he asserts that testimony regarding his out-of-court identification by an undisclosed informant was inadmissible hear-

---

**1.** 16 *Del.C.* § 4751(a) stated:

Except as authorized by this chapter, any person who manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug is guilty of a felony and shall be fined not less than $5,000 nor more than $50,-000 and imprisoned not more than 25 years unless the defendant is not himself addicted to narcotic drugs in which case, upon conviction, he shall be fined not less than $25,000 nor more than $100,000 and imprisoned for 30 years without eligibility for parole.

**2.** 11 *Del.C.* § 512 states:

A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or

(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and he or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

say and that its admission into evidence was reversible error. Finally, he contends that the trial judge should have instructed the jury that a defense under Wharton's Rule, as codified in 11 *Del.C.* § 521(c),[3] existed for the conspiracy charge. After hearing oral argument and reviewing the record and the briefs, we affirm the decision of the Superior Court.

The trial record reveals that on the night of Thursday, June 18, 1987, Delaware State Police Detective Harry Downs, working undercover and based on a tip from a confidential informant, sought to make a purchase of cocaine in Middletown, Delaware. He was introduced by the informant to the appellant who listened to his request and walked over to a parked car occupied by two men. The appellant returned saying that the men indicated that they had no drugs left, but they would go and get some more. The two men left in the car and were gone for approximately one-half hour while Downs waited with the appellant. When the car returned, the appellant approached it alone, paid the occupants $20.00 supplied by Downs, and received a small bag of cocaine. The appellant then returned and gave the cocaine to the police officer. Upon returning from the purchase, Downs gave descriptions of the appellant and the two others who had participated in the transaction to the New Castle County Police in the presence of the confidential informant. As Downs described the participants, the confidential informant provided names of the individuals. New Castle County Police arrested Johnson, Adam Daniels, and Devin Dickerson on August 6, 1987. From their arrest photographs, Downs confirmed that they were the three persons involved in the June 18 drug sale. All three were charged with delivery of a Schedule II narcotic in violation of 16 *Del.C.* § 4751(a) and conspiracy in the second degree in violation of 11 *Del.C.* § 512. Daniels was charged with additional violations. Prior to trial appellant moved for disclosure of the identity of

the confidential informant. The Superior Court held an *in camera Flowers* hearing during which the judge met with and interrogated the confidential informant. The appellant's motion was denied because the court found

> ... that the informant can offer no testimony supporting [Johnson's] contention that he was misidentified as a participant in the drug transaction which is the subject matter of this prosecution.

Under terms of a plea agreement entered on the day of trial, Daniels pleaded guilty to the drug delivery charge, the State dropped several other charges against him, and Daniels agreed to testify against Johnson and Dickerson. In his testimony, Daniels said that Johnson had not been with Dickerson and himself in the car on June 18. Johnson had purchased drugs from Daniels but had not directly indicated that the purchase was for someone else. Daniels had observed the other man (Downs) and testified that he "just figured [Johnson] was coming for someone else." Daniels also testified that Johnson only approached his car once that evening.

During his testimony, Daniels stated that he had never participated in a drug sale before or since the June 18, 1987 incident. However, at the end of the State's case, the deputy attorney general read into the record an affidavit which stated that a police detective had purchased cocaine from Adam Daniels on a date prior to June 18, and that Daniels had been indicted for that offense. Defense counsel moved for a mistrial on the basis that the State had knowingly relied on perjured testimony by Daniels. The court denied the motion, holding that while it was clear that the witness had not been truthful about his other drug dealing, there was no proof that his account of the transaction at issue in this trial was false.

Detective Bruce Arterbridge of the New Castle County Police testified that after the drug transaction he met with Detective

---

**3.** 11 *Del.C.* § 521(c) states:

No person may be convicted of conspiracy to commit an offense when an element of the offense is agreement with the person with whom he is alleged to have conspired, or when the person with whom he is alleged to have conspired is necessarily involved with him in the commission of the offense.

Downs and the confidential informant. As Downs described the events and the individuals involved, the informant assisted by matching the descriptions of the participants to the names of individuals he knew. Over defense objection, Arterbridge testified that the informant identified the three defendants. The trial court ruled that Arterbridge's testimony did not constitute hearsay because it was offered only to explain the ensuing activities of the police who arrested the three defendants six weeks later. Additionally, the trial judge noted that the testimony of other eyewitnesses, Downs and Daniels, had established the identity of the defendants as those who took part in the transaction. The jury was given a specific instruction that the confidential informant's naming of the defendants was not to be considered as evidence of their guilt.

At trial the appellant's defense was mistaken identity. The appellant and his wife were the only new witnesses called by the defense. They testified that the appellant's usual habit was to be at home with his family on weekday evenings.

Co-appellant Dickerson did not put on a defense. He and Johnson were found guilty of both counts against them. Johnson alone has brought this appeal.

### I.

■ Johnson's first contention on appeal is that the court erred by failing to grant his motion for a mistrial following the perjured testimony by Daniels. Appellant relies upon *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The court below held that no proof had been introduced which called into doubt Daniels' testimony concerning the drug transaction on June 18, 1987. We agree with the trial court's holding on this issue. Contrary to the situation in the *Napue* case, the prose-

cutor had not knowingly allowed the witness to lie, and he had entered into the record evidence which contradicted the false testimony. The prosecutor also mentioned in his closing remarks the falsehood told by the witness. The jury was fully informed of Daniels' perjury. We hold that the false testimony affected only the credibility of the witness which could be properly weighed and determined by the jury. *Tyre v. State*, Del.Supr., 412 A.2d 326, 330 (1980).

### II.

Johnson next argues that an out-of-court statement by an unnamed informant which identified the defendants was inadmissible hearsay, and its admission into evidence was reversible error. He also asserts that the admission of Downs' and Arterbridge's testimony concerning identifications made by the confidential informant violated the appellant's right to confront witnesses guaranteed by the Sixth Amendment of the United States Constitution.

### A.

Delaware Rules of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." If a statement is introduced for a purpose other than its truth, however, it may be admissible under some circumstances. If it is admitted for another purpose, that purpose must be relevant to an issue of the trial. D.R.E. 401.[4] However, while evidence may be relevant, it must also be substantially more probative to an issue than prejudicial to the defendant. D.R.E. 403.[5] It is under these rules that the testimony in question must be analyzed.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

---

**4.** D.R.E. 401 states:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**5.** D.R.E. 403 states:

Problems arise when the statement to be quoted may serve more than one purpose. McCormick states:

> In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.

McCormick, *Evidence* § 249 at 734 (Cleary 3d ed. 1984).

This Court has held that testimony regarding statements which explain why the police believed a particular person was a suspect is not hearsay, because the accuracy of the statements is not asserted. *Whalen v. State,* Del.Supr., 434 A.2d 1346 (1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982).[6] In that case, an investigating officer stated during cross-examination by defense counsel that specific information which indicated that the defendant may· have committed the crime was provided by interviews with neighbors. This Court ruled on appeal that:

> [T]he answer did not contain hearsay because those out-of-court statements were not mentioned "to prove the truth of the matter asserted." Del.Rule of Evid. 801(c). The reference to out-of-court statements was to show why the detective believed the defendant was a suspect and was not intended to show that those statements were accurate.

*Id.* at 1355. In the *Whalen* case, the neighbors' statements were part of the post-crime investigation, and the neighbors could have been called as witnesses. In contrast, we are confronted with a situation in which the informant was involved throughout the planning, execution, and follow-up of the drug transaction; the testimony was that the informant specifically identified the three defendants; the testimony about the identification was introduced by the prosecution during direct examination; and the informant was unavailable to testify because the court had ruled that his identity would not be disclosed.

█ While Delaware courts have not previously ruled on the admissibility of the out-of-court identification of crime suspects by unnamed police informants, courts generally scrutinize out-of-court statements as to the availability of the speaker, the specificity of the information, the need of the statement in relation to other evidence, its relevancy to the question of guilt and the statement's prejudice to the defendant. *See, e.g. Whalen* at 1355; *United States v. Reynolds,* 715 F.2d 99 (3rd Cir.1983); *Berry v. State,* 254 Ga. 101, 326 S.E.2d 748 (1985); *People v. Billingsley,* 184 Ill. App.3d 142, 132 Ill.Dec. 496, 539 N.E.2d 1302 (1989); *People v. Holt,* 67 N.Y.2d 819, 501 N.Y.S.2d 641, 492 N.E.2d 769 (1986); *People v. Johnson,* 57 N.Y.2d 969, 457 N.Y. S.2d 230, 443 N.E.2d 478 (1982).

Many jurisdictions have recognized that out-of-court statements may be admitted to explain why the police took certain actions once their conduct is placed at issue in the trial. *United States v. Love,* 767 F.2d 1052, 1063–64 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986) (evidence admissible to explain police conduct after it was called into question); *State v. Cruz,* 212 Conn. 351, 562 A.2d 1071 (1989) (evidence admitted not for identification, but to explain police action); *Johnston v. State,* Ind.Supr., 530 N.E.2d 1179 (1988) (testimony explained why police began surveillance); *Stout v. State,* Ind. Supr., 479 N.E.2d 563 (1985) (information provided by third party explained police actions); *State v. Gray,* La.App., 542 So.2d 684 (1989) (fact that a witness had pointed out defendant explained police actions);

---

**6.** In another case, *Atkins v. State,* this Court held that tape recorded discussions were relevant to a defense of entrapment and were not hearsay because they showed the effect of the statements on the police officer's state of mind. *Atkins v. State,* Del.Supr., 523 A.2d 539 (1987).

*State v. Parker,* La.App., 536 So.2d 459 (1988) (conduct of police leading to arrest of defendant explained); *State v. Brooks,* Mo.Supr., 618 S.W.2d 22 (1981) (drug informant statement explained police action); *State v. Sardeson,* Nebr.Supr., 231 Neb. 586, 437 N.W.2d 473 (1989) (eyewitness statement admitted to explain police actions when defendant argued that police manipulated witness). Such testimony has also been admitted in some cases involving the defense of entrapment, where the conduct of the police is at the heart of the defendant's case. *Atkins v. State,* Del. Supr., 523 A.2d 539 (1987); *United States v. Engler,* 627 F.Supp. 196 (M.D.Pa.1985), *aff'd* in part, *rev'd* in part, 806 F.2d 425 (3d Cir.1986); *Morris v. State,* Fla.Supr., 487 So.2d 291 (1986).

In several jurisdictions, explicit limitations have been placed on the use of out-of-court statements offered by the police to explain their actions. The Supreme Court of Indiana has held that the prosecution must prove that there is a reasonable level of assurance that testimony is offered *not* for its truth, but to explain police conduct. *Williams v. State,* Ind.Supr., 544 N.E.2d 161 (1989). In Connecticut, if an eyewitness is not an informant, his statement identifying a person may be admitted as long as the statement does not refer to anything that the identified person did. *State v. Cruz,* 212 Conn. 351, 562 A.2d 1071 (1989). In New Jersey, any reference to a statement made by a police informant must be limited to the phrase "information received" or the Sixth Amendment rights of the defendant will be violated. *State v. Bankston,* 63 N.J. 263, 307 A.2d 65, 69 (1973). The Court of Special Appeals of Maryland has ruled that if the statement of an informant has "misleading probative force," which may explain police conduct, but is also intended to influence the jury on the question of guilt, it is inadmissible hearsay. *Purvis v. State,* 27 Md.App. 713, 343 A.2d 898, 904 (1975).

Courts in Pennsylvania have applied a balancing test between the need for the circumstantial evidence and the danger of hearsay evidence being prejudicial to the defendant. *Commonwealth v. Under-wood,* 347 Pa.Super. 256, 500 A.2d 820 (1985). In a recent case, the Pennsylvania Supreme Court held that it was reversible error for the statements of a named, but unavailable, informant which contained specific assertions of criminal conduct, to be admitted because they tipped the balance too far toward prejudicing the defendant without a sufficient showing of need for their introduction by the prosecution. *Commonwealth v. Palsa,* 521 Pa. 113, 555 A.2d 808, 811 (1989) (three justices dissenting on grounds of harmless error). In the *Palsa* case, a police officer was allowed to testify that a man he had arrested said that he was on his way to the defendant's house to deliver marijuana. The man also told the police officer that he had sold the defendant marijuana the day before and had been given money to buy more for the defendant. The informant had fled the jurisdiction and was unavailable to testify. The trial court instructed the jury to regard these statements as relevant only to explain police conduct. On appeal, the court applied a balancing test "between avoiding the dangers of hearsay testimony and the need for evidence that explains why police pursued a given course of action." *Id.* 555 A.2d at 811. The majority held that the questioned testimony contained "specific assertions of criminal conduct by a named accused," which were likely to be understood by the jury as proof of a necessary element of the crime and that the activities of the police could easily have been explained without the use of the out-of-court statements. *Id.* The court reversed the conviction and remanded the case for a new trial because the incriminating nature of the evidence outweighed the asserted need for the evidence's other purposes. The dissent found that the out-of-court statements by the informant were not determinative of the defendant's guilt, concluding that even if the informant's statements were hearsay, they were *de minimis* and not grounds for reversal. *Id.* at 812. The majority focused on the prejudicial character of the specific hearsay evidence, while the dissent analyzed the limit-

ed potential for prejudice in relation to all of the evidence.

The balancing test applied by the Pennsylvania Supreme Court appears to be similar to the test applied in the holding of *Moore v. United States*, 429 U.S. 20, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976) where the United States Supreme Court addressed the issue of out-of-court statements used to explain police conduct. In that case, the Court held that testimony by a police officer that an unidentified informant had told him that Moore and others had heroin at "Moore's apartment" was inadmissible hearsay. Although the defendant was found at the apartment and heroin was also found there, the Court ruled that the trial court had relied expressly on the informant's statement in finding the defendant guilty of possession of heroin. Because the informant was unidentified, he could not be cross-examined as to the basis of his belief that Moore was a tenant or regular resident of the apartment. The Court ruled the statement inadmissible hearsay on the issue of guilt and remanded the case for a determination of whether admission of the hearsay evidence was harmless error. The Court did not address the Sixth Amendment explicitly. To the extent that the *Moore* case provides guidance in this case, it is on an evidentiary basis. An out-of-court statement of an unidentified informant is inadmissible if it provides the single piece of information relevant to an element of a crime, even though it also explains why the police suspected the defendant in the first place.

Appellant argues that the trial court's ruling admitting the statement of the unnamed informant in this case ignores the Sixth Amendment. The United States Supreme Court has addressed the Sixth Amendment right of confrontation and its relation to hearsay, but it has not explicitly disapproved admission of out-of-court statements on Sixth Amendment grounds.[7] The Court's position has been stated: "It is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be introduced." *Dutton v. Evans*, 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970).[8] In the case of *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), which involved an out-of-court statement of a co-conspirator, the Court stated, "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law." *Green*, 399 U.S. at 155, 90 S.Ct. at 1933–34, 26 L.Ed.2d 489. Neither *Dutton* nor *Green* applies the Sixth Amendment to the evidentiary issue present in the case before us today. The *Moore* case, which clearly addresses the evidentiary issue, refrains from mentioning the Sixth Amendment. In none

---

**7.** Other than the *Moore* case, appellant has referred this Court to only one other U.S. Supreme Court case, *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). In that case, the Court ruled (with two justices dissenting) that admission of an out-of-court identification by a witness who had lost his memory and could no longer identify the defendant was *not* a violation of the Sixth Amendment. The specific hearsay rule at issue was F.R.E. 801(d)(1)(C), not the definition of hearsay itself. Although it appears that we are referred to that case for the contrary proposition, the Court declined to draw a hand-in-glove relationship between hearsay and the Sixth Amendment. "This Court has recognized a partial (and somewhat indeterminate) overlap between the requirements of the traditional hearsay rule and the Confrontation Clause." *Owens*, 484 U.S. at 560, 108 S.Ct. at 843, 98 L.Ed.2d 951. On the point of the reliability of out-of-court identifications in general, the Court stated in the *Owens* case, "There does not appear in our opinions, and we decline to adopt today, the principle that, because of the mere possibility of suggestive procedures, out-of-court statements of identification are inherently less reliable than other out-of-court statements." *Id.*

**8.** In the *Dutton* case, the court also enunciated eight "indicia of reliability" which could be used to analyze the truth seeking value of out-of-court statements as a basis for deciding their admissibility. *Dutton*, 400 U.S. at 88–89, 91 S.Ct. at 219–20, 27 L.Ed.2d 213. It could be argued that the *Flowers* hearing with the informant before the trial in this case had some bearing on the reliability of the informant.

of these rulings has the United States Supreme Court held that admission of hearsay evidence is an automatic violation of the Sixth Amendment.

■ In reviewing the facts of the present case, we find that the statement of the unidentified informant was inadmissible hearsay under D.R.E. 403. While the statement was highly incriminating to the defendant, it was merely cumulative in the State's case against him, and it did not have important relevance as an explanation for police conduct. There was little need for the informant's statement to explain why the police arrested Johnson since the primary witness for the State at trial was the undercover police officer who had participated in the drug transaction. There was no further need to explain police actions since the defense did not challenge the procedures used in arresting the defendants, nor did it accuse the police of arbitrary conduct. The facts are clearly distinguishable from our prior ruling in *Whalen v. State*, Del.Supr., 434 A.2d 1346 (1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982), where we found that out-of-court statements were admissible to explain police action. While we find that the confidential informant's statement in this case was inadmissible hearsay under D.R.E. 403, we do not find that the admission of the informant's statement violated the Sixth Amendment since Johnson's accuser was the undercover police officer who had negotiated the drug purchase with Johnson and who identified him both in photographs and in court.[9]

### B.

■ Although we find that the statement of the unidentified informant was inadmissible by application of a standard which balances the dangers of hearsay testimony with the need for evidence in a criminal case, a review of the State's complete case against Johnson shows that the error of admitting the hearsay testimony was harmless. This Court has previously stated a standard for determining whether an error in admitting evidence was harmless. "The well-established rule is that where the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction, error in admitting the evidence is harmless." *Collins v. State*, Del.Supr., 420 A.2d 170 (1980), *citing Outlaw v. State*, Del.Supr., 327 A.2d 606 (1974) and *Tucker v. State*, 55 Del. 342, 187 A.2d 429 (1963). Even if we view the evidence in this case under the stricter standard required for evidentiary errors of constitutional magnitude, we find that the other evidence against Johnson was sufficient to sustain his convictions. The test for constitutional evidentiary error was adopted at the direction of the United States Supreme Court. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). It requires showing that the error was "harmless beyond a reasonable doubt." *Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 11 (1987), *citing Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The case against appellant was not merely circumstantial. Johnson was identified both from photographs and in court by the undercover police officer who witnessed the crime. The police officer's identification was corroborated by a co-conspirator. Neither of these witnesses was a casual observer who was likely to have been mistaken in making the identification.

The defendant presented no credible evidence that he was misidentified by either witness. His only alibi witness was his wife. We find that the jury would have reached the same result without the hearsay testimony identifying Johnson. The appellant has not shown that the erroneous admission of the hearsay statements affected the result of the trial.

An otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that a constitutional error was harmless beyond a reasonable doubt. *Delaware v. Van Ars-*

---

9. Because we find the admission of the confidential informant's identification of the appellant to have been error we do not address the curative instructions provided by the trial court.

*dall,* 475 U.S. at 681, 106 S.Ct. at 1436, 89 L.Ed.2d 674.

### III.

At the end of the testimony, the appellant requested that the jury instructions include the language of 11 *Del.C.* § 521(c), a codification of Wharton's Rule. This request was denied. Appellant argues on appeal that Wharton's Rule does apply to the conspiracy offense in this case and that it was reversible error for the trial judge not to have included a charge on 11 *Del.C.* § 521(c).

Wharton's Rule provides an exception to the general rule that conspiracy and the substantive offense planned by the conspirators are separate crimes. It provides that "an agreement between two persons to commit an offense does not constitute conspiracy when the target offense is so defined that it can be committed only by the participation of two persons ..." 4 Wharton's Criminal Law § 731 at 545 (14th ed. 1981). This rule was examined extensively by the U.S. Supreme Court in 1975. *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The Court stated that the Rule "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." 420 U.S. at 782, 95 S.Ct. at 1292, 43 L.Ed.2d 616. The United States Supreme Court held that when a trial court must decide whether or not the Rule applies to a particular offense, the focus should be on "the statutory requirements of the substantive offense rather than the evidence offered to prove those elements at trial." 420 U.S. at 780, 95 S.Ct. at 1291, 43 L.Ed.2d 616. If it is found that the Rule would apply to a particular offense, both conspiracy and the substantive offense may be charged, but the jury must be instructed that a conviction for the substantive offense necessarily precludes conviction for conspiracy. 420 U.S. at 775, 95 S.Ct. at 1289, 43 L.Ed.2d 616.

Wharton's Rule applies traditionally to crimes such as adultery, incest, bigamy, and dueling. *See* 16 Am.Jur.2d, *Conspiracy* § 6 (1979). In the *Iannelli* case, the U.S. Supreme Court identified general characteristics of crimes to which the Rule would apply. They included crimes in which the parties to the agreement were the only participants in the offense. The immediate consequences of the crime fell on the parties, not on society, and the agreement did not pose a threat to society that conspiracy laws are designed to avert, such as a more general pattern of criminal activity *Iannelli,* 420 U.S. at 782–84, 95 S.Ct. at 1292–93, 43 L.Ed.2d 616.

This Court has held that the legislative purpose of the Uniform Controlled Substances Act, 16 *Del.C.* §§ 4701–4796 is to control a societal evil by stating "[w]e are well aware that the organized traffic in illegal drugs is a serious problem, causing not only debilitating effects in those who use such substances, but fostering additional crimes." *Traylor v. State,* Del. Supr., 458 A.2d 1170, 1178 (1983). If the legislature intended to limit 16 *Del.C.* § 4751(a) to one which required a partnership or agreement with suppliers and customers, it could have provided the necessary language. *See Iannelli,* 420 U.S. at 789, 95 S.Ct. at 1296, 43 L.Ed.2d 616 (holding that the Omnibus Crime Control Act of 1970 described "gambling activities" by five or more persons separately from conspiracy to promote gambling activities). We are of the opinion that it is evident, therefore, that 16 *Del.C.* § 4751(a) does not describe an offense to which Wharton's Rule applies. A person could possess narcotics with the intent to deliver them without actually delivering them to another person. This analysis has been adopted by federal courts addressing similar offenses. *See United States v. Rivera,* 872 F.2d 507 (1st Cir.1989); *United States v. Schleicher,* 862 F.2d 1320 (8th Cir.1988); *United States v. Prati,* 861 F.2d 82 (5th Cir.1988).

In Delaware, the only reported case testing the application of 11 *Del.C.* § 521(c) held that it did not apply to the offense of receiving stolen goods (11 *Del.C.* § 851). *Guyer v. State,* Del.Supr., 453 A.2d 462 (1982). The offense described in the statute did not on its face require agreement with another person, because "one may

receive property he knows to be stolen from another who is without such knowledge." *Id.* at 466. This holding was consistent with the ruling in the *Iannelli* case in that it applied the Rule to the statute, without regard to the factual situation presented in the particular case before the Court.

If Wharton's Rule was found to be applicable in this case, the court would have been required to include it in the instructions to the jury. 11 *Del.C.* § 303(c).[10] However, since Wharton's Rule does not apply to an offense involving possession with intent to deliver, the trial court did not err in its ruling.

\* \* \*

The judgment of the trial court is affirmed.

---

10. 11 *Del.C.* § 303(c) states:
    If some credible evidence supporting a defense is presented, the defendant is entitled to a jury instruction that the jury must acquit him if they find that the evidence raises a reasonable doubt as to the defendant's guilt.