In re PAJARITO AMERICAN INDIAN ART, INC., an Arizona corporation, dba Ashton Gallery, Bankrupt.

In re Robert ASHTON, Jr., Bankrupt.

In re Sharon ASHTON, Bankrupt.

Marilyn PERRY, Plaintiff,

v.

Lee LYON, LeRoy and Jacqueline Holubar, Phil Holstein and Robert Ward, Defendants.

Bankruptcy Nos. B–77–1658 PHX–ED to B–77–1660 PHX–ED.

United States Bankruptcy Court, D. Arizona.

Oct. 31, 1980.

Howard C. Meyers, Phoenix, Ariz., for plaintiff.

Mendal Small, Kansas City, Mo., for defendant Lee Lyon.

Frederick K. Steiner, Jr., Phoenix, Ariz., for defendants LeRoy and Jacqueline Holubar.

James F. Brook, Tempe, Ariz., for defendant Robert Ward.

## MEMORANDUM OPINION

WILLIAM A. SCANLAND, Bankruptcy Judge.

Plaintiff, the Trustee in the three above–captioned bankruptcy cases, filed a complaint for a turnover order against Defendants seeking a return of a Sioux Indian ghost dance shield. The shield is approximately 20 inches in diameter, has a wooden frame covered by canvas, and has eagle feathers attached to the face. The Defendants LeRoy and Jacqueline Holubar, hereinafter referred to as Holubar, filed an answer claiming a one–half interest in the shield. Defendant Robert Ward filed an answer and crossclaim against all other defendants claiming ownership of the shield. Defendant Lee Lyon answered alleging that he has possession of the shield, that demands have been made upon him for delivery of possession by various defendants, and alleges that he is willing to return the shield to the party determined by this Court entitled to receive possession. The Trustee in open court through her attorney stated that she no longer sought possession of the shield as she had no claim to it. Defendant Phil Holstein has failed to answer and his default was duly entered against him foreclosing any claim he might make to the shield.

Trial was had in this matter on September 12, 1980. Evidence, both written and oral, was introduced. It is clear that Defendant Robert Ward owned the shield as of July 1977, and had owned it for some fifteen years. The evidence showed that Robert Ashton, Jr. telephoned him in July 1977, and discussed showing the shield to prospective buyers. Defendant Ward testified that he told Mr. Ashton that the shield could not be sold because of a pending lawsuit to determine whether certain applicable Federal statutes prohibited the sale. A lawsuit to determine this issue had been filed in the United States District Court for the District of Colorado. Ward further testified that he told Mr. Ashton the shield could not be sold until the pending lawsuit was settled. In late July, Robert Ashton appeared at the office of Defendant Ward in Santa Fe, New Mexico, and took possession of the shield and left an unsigned document on which the name "Bob Ashton" was written, together with the words under the word "Description" "on approval", and the figure "7500.00" under the printed word "Amount." Mr. Ashton told either Robert Ward or Ward's secretary that he was going to go to Colorado, stop in Boulder, Colorado, and show the shield to prospective buyers. On or about September 1, 1977, Mr. Ashton met with Holubars at their home in Boulder, Colorado, and sold or allegedly sold them a one–half interest in various Indian artifacts for a total sum of $20,000.00, including the shield at issue before the Court. He apparently kept possession of the shield and allegedly sold an undivided one–half interest to the Defendant Phil Holstein, and offered to sell it to Defendant Lee Lyon.

Were it not for the Federal statutes which this Court will discuss later, this Court believes that the matter would be resolved under the Uniform Commercial Code of the State of New Mexico and Colorado. N.M.S. § 55–2–403 contains the provisions of 1A U.L.A.–U.C.C. § 2–403. The exact wording is contained in A.R.S. § 44–2348(B). This particular paragraph reads as follows:

"B. Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

The next paragraph of this section reads as follows:

"C. 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The Defendant Ward was a recognized dealer in Indian artifacts, as was Robert Ashton, Jr. The testimony also shows that the Defendants Holubar were wealthy people who collected Indian artifacts. This Court was not able to find any New Mexico cases construing this section. There are some Arizona cases which base upon this particular section. See *Patterson Motors, Inc. v. Cortez*, 2 Ariz.App. 298, 408 P.2d 231 (1965). The principles of *Luhrs v. Valley Ranch Co.*, 27 Ariz. 306, 232 P. 1014 (1925) are applicable although this case is prior to the Uniform Commercial Code.

■ The principles expressed by the New Mexico statute and the Arizona cases concern the Doctrine of Equitable Estoppel. The issue before this Court as to the ownership of the shield is between the Holubars who claim an undivided one–half interest, and Ward, who claims title to the shield. The Equitable Estoppel would arise under the situation where a seller of goods delivered possession to certain goods to a like seller of goods without indicia of title, and

the second merchant sells the goods in the ordinary course of business to a third party, not a merchant or seller of goods.

This Court believes, however, that this matter cannot be settled by relying upon the Uniform Commercial Code.

The case that was pending in the United States District Court for the District of Colorado was brought by certain dealers in Indian artifacts to determine whether or not the sale of birds or parts of birds that had been lawfully acquired prior to the enactment of two Federal statutes was lawful. The first Federal statute is the Migratory Bird Treaty, 16 U.S.C. § 703, first passed by the Congress on July 3, 1918, and amended as of June 1, 1974. The other Federal statute is known as the Protection of Bald and Golden Eagles, cited as 16 U.S.C. § 668, which was originally passed on June 8, 1940, and amended as recently as October 23, 1972. Each of these Federal statutes make it unlawful to sell . . . or purchase any migratory bird, any part, nest, or egg of any such bird. The Protection of Bald and Golden Eagles Act prohibits and makes unlawful, the sale . . . or purchase of any bald eagle, commonly known as the American eagle, or any golden eagle. The United States District Court for the District of Colorado, sitting as a Three–Judge Court, held that the foregoing Federal statutes did not prohibit the sale . . . or purchase of migratory birds or parts of the birds that were obtained prior to the enactment of the Federal statutes. This opinion was entered on June 7, 1978. An appeal of this decision and judgment was taken to the United States Supreme Court, and *In re Andrus v. Allard*, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979), the United States Supreme Court reversed the District Court opinion. The Secretary of the Interior, under the authority of the Migratory Bird Treaty Act, had made Federal regulations which provided that migratory birds and parts may be possessed or transported without a federal permit but may not be sold or offered for purchase. See 50 C.F.R. § 21.-2(a). A like regulation was made under the Eagle Protection Act permitting the posses-

sion and transportation of bald eagles or golden eagles, or parts thereof. See 50 C.F.R. § 22.2(a).

The Supreme Court held, "The prohibition against the sale of bird parts lawfully taken before the effective date of federal protection is fully consonant with the purposes of the Eagle Protection Act. It was reasonable for Congress to conclude that the possibility of commercial gain presents a special threat to the preservation of the eagles because that prospect creates a powerful incentive both to evade statutory prohibitions against taking birds and to take a large volume of birds. The legislative draftsmen might well view evasion as a serious danger because there is no sure means by which to determine the age of bird feathers; feathers recently taken can easily be passed off as having been obtained long ago." The Court goes on to say 100 S.Ct. on page 324, "On its face, the comprehensive statutory prohibition is naturally read as forbidding transactions in all bird parts, including those that compose pre–existing artifiacts." They then hold, "We are therefore persuaded that the Migratory Bird Treaty Act empowers the Secretary of the Interior to bar commercial transactions in covered bird parts in spite of the fact that the parts were lawfully taken before the onset of federal protection."

 The Court then goes on to hold that such prohibition of the sale of pre–statutory bird parts or feathers is not the taking of a property right under the Fifth Amendment to the Constitution of the United States. Holubars' attorney argues in his memorandum that it is at least an open question as to whether or not the Court will give the *Allred* case retrospective effect in construing a contract. None of the cases cited in his legal memorandum support this proposition. Each of the cases cited, starting with *Williams v. U. S.*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), relate to the passing of a statute or a court decision which has a retroactive effect. Here we have existing statutes when the transaction between Ashton and Holubar took place on September 1, 1977.

This Court has searched diligently for a case to sustain the proposition that this transaction between Ashton and Holubars on or about September 1, 1977, was an illegal contract but has been unable to find a case in point or an analogous case. But in view of the United States Supreme Court's reasoning and holding, this Court finds that this transaction was an illegal contract. The Court is aware of textbook writers who discuss remedies in the situation of an illegal bargain. See Restatement of Law, Contracts, Sec. 598. This section states the general rule that neither party can enforce nor recover damages by rescission of an illegal bargain. There are set exceptions to this general proposition. Holubars' attorneys might well argue that Ward should not recover because under the Uniform Commercial Law he made possible the illegal transaction which resulted in the Holubars paying $20,000.00 for an undivided one–half interest in various Indian artifacts, including the shield. However, this Court believes that the underlying public policy involved and as expressed by the United States Supreme Court in *Andrus v. Allred, supra,* outweighs the equitable principles upon which Holubars rely to obtain title to an undivided one–half interest in the shield. There was testimony that the Holubars were aware of the lawsuit involving the Federal statutes as they had contributed to what was known as the Eagle Defense Fund. This fact has no bearing on this decision, but this Court believes that the Holubars knew, or should have known, of the distinct possibility that the shield with the attached eagle feathers could not be sold or purchased. It could only be possessed or transported.

Our Ninth Circuit, in *California Pacific Bank v. Small Business Administration,* 557 F.2d 218 (1977), has discussed the enforceability of an illegal contract. They stated: "Out of the welter of common law rules regarding illegality has come the general principle that illegal contracts are unenforceable only where (1) a statute explicitly provides that contracts contravening it are void or (2) where 'the interest in [the contract's] enforcement is clearly outweighed

in the circumstances by a public policy against the enforcement of such terms.' ", citing Restatement (Second) of Contracts § 320(1) at 53 (Tent. Draft No. 12, March 1, 1977).

For the foregoing reasons, the Court finds that the Defendant Robert Ward is the owner of the shield and that no other party to this action has any interest in it. Defendant Lee Lyons IS ORDERED to deliver possession of the shield to Robert Ward. Defendant Robert Ward's attorney IS ORDERED to prepare and lodge with this Court an appropriate form of judgment within ten (10) days from date. This Memorandum Opinion shall serve as Findings of Fact and Conclusions of Law under Rule 752 of the Bankruptcy Rules of Procedure.